Vice Chief Justice PELANDER,
opinion of the Court.
¶ 1 The question presented is whether law enforcement officers assume a duty of care to an accident victim’s family by notifying the family of the victim’s apparent injury or death. We hold that no duty arises from such notifications alone.
I.
¶ 2 The material facts, as set forth in the court of appeals’ opinion, are undisputed. Guerra v. State, 234 Ariz. 482, 484-85 ¶¶ 2-13, 323 P.3d 765, 767-68 (App.2014). In July 2010, April Guerra and her close friend, M. C., were seriously injured in a single-vehicle rollover. M.C. died at the scene and April was hospitalized. Because of their physical similarities and the severity of their injuries, however, the investigating Arizona Department of Public Safety (“DPS”) officers and hospital medical staff had difficulty identifying which of the women died and who was hospitalized.
¶ 3 Hours after the accident, a hospital charge nurse identified the surviving patient as M.C. and told DPS officers that she was certain of that identification. The officers, joined by a DPS chaplain, then informed April’s mother and aunt that April had died, but cautioned that the mother would still need to positively identify the body. The mother then informed April’s father, who was out of town, of April’s death.
¶ 4 Based on additional information the Guerras furnished over the next several days, including April’s dental records and thumbprint, further investigation revealed that April was the hospital patient, not the decedent. Six days after the accident and notification, April was positively identified as the hospital patient, and later, M.C. as the deceased passenger.
¶ 5 The Guerras sued the State and various State employees (collectively, “the State”), alleging negligence, negligent training, and intentional infliction of emotional distress. Only the negligence claim is at issue here, in which the Guerras alleged that the officers “performed a negligent and/or grossly negligent investigation into the identity of the deceased victim and wrongly concluded that [April] had died at the scene.” The State moved for summary judgment, arguing that law enforcement officers owe no duty “to conduct an investigation that results in accurate identification of a deceased person.” The Guerras cross-moved for partial summary judgment, arguing that the officers assumed a duty when they undertook to investigate and notify the Guerras of their daughter’s death. The superior court granted the State’s motion and denied the Guerras’ cross-motion, implicitly finding that the officers did not owe a duty to the Guerras.
¶ 6 The court of appeals reversed and ordered partial summary judgment in favor of the Guerras on the duty issue. Id. at 491 ¶ 37, 323 P.3d at 774. We granted review because the legal issue presented is one of first impression for this Court and of statewide importance. We have jurisdiction pur *185 suant to Article 6, Section 5(3) of the Arizona Constitution and A.R.S. § 12-120.24.
II.
¶ 7 Under Arizona’s common law of negligence, “duty” is “an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection.” Ontiveros v. Borak, 136 Ariz. 500, 508, 667 P.2d 200, 208 (1983) (quoting William L. Prosser, Handbook of the Law of Torts § 42, at 325-26 (4th ed.1971)); see also Markowitz v. Ariz. Parks Bd., 146 Ariz. 352, 355, 706 P.2d 364, 367 (1985) (describing “duty” as “the relation between individuals which imposes upon one a legal obligation for the benefit of the other” (quoting Cobum v. City of Tucson, 143 Ariz. 50, 52, 691 P.2d 1078, 1080 (1984))). Whether a duty exists is a question of law which we determine de novo. Stanley v. McCarver, 208 Ariz. 219, 221 ¶ 5, 92 P.3d 849, 851 (2004). “[A]bsent some duty, an action for negligence cannot be maintained.” Gipson v. Kasey, 214 Ariz. 141, 143 ¶ 11, 150 P.3d 228, 230 (2007).
¶ 8 “Duties of care may arise from special relationships based on contract, family relations, or conduct undertaken by the defendant,” id. at 145 ¶ 18, 150 P.3d at 232, and from public policy considerations, id. at ¶ 23. Foreseeability of harm is not a relevant consideration in determining the threshold legal issue of whether a duty exists, nor are case-specific facts. Id. at 144 ¶ 15, 145 ¶ 21, 150 P.3d at 231-32.
A.
¶ 9 The court of appeals acknowledged, and the Guerras agree, that neither a contractual relationship nor a traditional common-law relationship (such as landowner-invitee) gives rise to a duty here. Guerra, 234 Ariz. at 486 ¶ 18, 323 P.3d at 769. The court nevertheless held that by undertaking to provide a next-of-kin (“NOK”) notification, DPS assumed a duty of care to the Guerras — at least as to the accuracy of the information conveyed. Id. at 488 ¶ 21, 489 ¶ 24 n. 7, 323 P.3d at 771, 772 n. 7. In so holding, the court cited common law and declined to determine the applicability of Restatement (Second) of Torts § 323 (1965) (“Restatement”), the sole authority the Guerras relied on in both the superior court and court of appeals. See id. at 486 ¶ 18 n. 5, 487-88 ¶ 21, 323 P.3d at 769 n. 5, 770-71. Restatement § 323 provides:
One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other’s person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
(a) his failure to exercise such care increases the risk of such harm, or
(b) the harm is suffered because of the other’s reliance upon the undertaking.
(Emphasis added.)
¶ 10 The State argues that Restatement § 323 does not impose a duty on law enforcement officers who undertake to provide NOK notifications because such notifications “are neither intended nor necessary to protect the recipients from physical harm to their persons or their things.” Given the clear wording of § 323, the State’s argument has merit. See Lips v. Scottsdale Healthcare Corp., 224 Ariz. 266, 268 ¶ 10, 229 P.3d 1008, 1010 (2010) (citing Restatement § 323 for the proposition that “the common law imposes a duty of reasonable care on a party who voluntarily undertakes to protect persons or property from physical harm”); see also Stanley, 208 Ariz. at 223 ¶¶ 13-15, 92 P.3d at 853 (noting that our conclusion, that “public policy is better served by imposing a duty” on a doctor who “undertook a professional obligation with respect to [the plaintiffs] physical well being,” comports with related Restatement § 324A).
¶ 11 This Court, however, has extended the reach of Restatement § 323 to claims of economic as well as physical harm. McCutchen v. Hill, 147 Ariz. 401, 404, 710 P.2d 1056, 1059 (1985) (citing Restatement § 323 to hold that a deputy’s agreement not to release a father from custody until he posted a cash bond “gave rise to ‘the duty to use proper care in the performance of the task’ assumed” and subjected him to liability for loss *186 of the bond (quoting W. Page Keeton et ah, Prosser and Keeton on Torts § 56, at 379 (5th ed.1984))). We question McCutchen to the extent it found a duty under Restatement § 323 without discussing whether that section encompasses economic harm. Nonetheless, other Arizona courts have since followed suit. See Steinberger v. McVey, 234 Ariz. 125, 137 ¶ 47, 318 P.3d 419, 431 (App.2014) (collecting cases).
¶ 12 The dissent asserts, infra ¶ 30, that Restatement § 323’s plain language should be stretched even further to encompass claims for purely emotional harm, separate and apart from claims for negligent infliction of emotional distress, a tort which Arizona recognizes but which clearly does not apply here. See Villareal v. Ariz. Dep’t of Transp., 160 Ariz. 474, 481, 774 P.2d 213, 220 (1989) (“Negligent infliction of emotional distress requires that the plaintiff witness an injury to a closely related person, suffer mental anguish that manifests itself as a physical injury, and be within the zone of danger so as to be subject to an unreasonable risk of bodily harm created by the defendant.”). Even if we interpret the word “person” broadly to refer to not only physical but also emotional wellbeing, we are not persuaded by the dissent’s argument, infra ¶ 31, that notifying next of kin of a loved one’s death is a service an officer “should recognize as necessary for the protection” of the next-of-kin’s “person.” Restatement § 323. Rather than protecting next of kin from emotional harm, NOK notifications are, in the dissent’s words, infra ¶ 32, most “likely to cause continued, long-term mental disturbance.” Cf. Dan B. Dobbs, Undertakings and Special Relationships in Claims for Negligent Infliction of Emotional Distress, 50 Ariz. L. Rev. 49, 63 (2008) (noting that in an action for emotional distress, the plaintiff “will lose any ease that depends upon undertakings if she cannot sustain her burden of showing that the defendant undertook to use care to protect her from the particular invasion she now claims”).
¶ 13 Moreover, imposing a duty of care whenever law enforcement officers deliver NOK notifications would be inconsistent with cases holding that officers do not owe a duty to victims or their families by undertaking to investigate a crime or accident and identify victims. See Vasquez v. State, 220 Ariz. 304, 313 ¶ 30, 206 P.3d 753, 762 (App.2008) (“[A] special relationship between an investigating law enforcement agency and a decedent’s family member does not arise merely by the agency undertaking to investigate an accident or resulting death.”); Morton v. Maricopa County, 177 Ariz. 147, 149-50, 865 P.2d 808, 810-11 (App.1993).
¶ 14 In Morton, a county sheriff’s office undertook to investigate and identify partial human remains found in the desert. 177 Ariz. at 149, 865 P.2d at 810. When deputies identified the remains years after their disposal, they notified the victim’s parents. Id. The parents sued the sheriff for negligently failing to timely identify the remains. Id. Relying on a California case which held that “the undertaking by the police to make a report and assure appropriate action will be taken does not create a ‘special relationship’ from which ‘duty’ is born,” id. at 150, 865 P.2d at 811 (quoting Shelton v. City of Westminster, 138 Cal.App.3d 610, 188 Cal.Rptr. 205, 213 (1982)), the Morton court concluded that the undertaking to identify human remains primarily “foster[s] public safety through the investigation of suspected homicides” and only “incidentally benefits friends and relatives,” id. at 151, 865 P.2d at 812. Because this incidental purpose was insufficient to create a relationship between the sheriffs office and the victim’s parents, the court held that no duty existed. Id.
¶ 15 Similarly, Vasquez held that police officers, despite having undertaken an investigation into a fatal accident following a high-speed pursuit, had no duty to identify the motorist who died or to notify his next of kin. 220 Ariz. at 313 ¶ 30, 206 P.3d at 762. In so holding, the court found Restatement § 323 “clearly inapplicable.” Id. at 314 ¶ 32 n. 7, 206 P.3d at 763 n. 7.
¶ 16 Although the Guerras allege that the DPS officers negligently informed them that their daughter was deceased, the core of their complaint is that the officers failed to reasonably investigate the decedent’s identity. The Guerras have not alleged negligence in the method or manner in which the notifi *187 cation was given; rather, the officers’ alleged negligence arises solely from the deficient investigation that failed to reveal the charge nurse’s misidentification. Given the thrust and actual underpinnings of the Guerras’ negligence claim, it is difficult to square finding a duty of care in this case when no duty was found in Morton and Vasquez, cases with which we agree.
¶ 17 The dissent’s attempt to distinguish this case as involving a “direct relationship [that] resulted once police officers undertook to contact the Guerras,” infra ¶ 38, is unavailing. The California case on which Morton relied specifically rejected the argument that a “special relationship” was created when the police “represented [to the plaintiffs that] the missing person report would be fully and completely investigated.” Morton, 177 Ariz. at 150, 865 P.2d at 811 (quoting Shelton, 188 Cal.Rptr. at 212). Contrary to the dissent’s suggestion, infra ¶ 38, we are not persuaded that the outcome in Morton or Vasquez would have been different had the officers made inaccurate representations to the plaintiffs regarding their investigations.
¶ 18 Nor are we persuaded by the court of appeals’ reasoning that “once law enforcement concludes sufficient evidence exists to support a NOK notification, it is necessarily the case that the investigation into the decedent’s identity is, at that point, complete.” Guerra, 234 Ariz. at 488 ¶ 22, 323 P.3d at 771. The undisputed facts of this case belie this distinction. Despite the NOK notification, the Guerras were told that they would still need to identify the body, and they later furnished additional identifying information.
¶ 19 The court of appeals and the dissent do not disagree with Morton or Vasquez, nor do the Guerras. Because those cases evince sound reasoning that is equally applicable here, we likewise agree that officers do not owe a duty to a victim’s family or friends by undertaking to investigate a crime or accident and identify victims. No principled distinction exists between the investigation and notification for purposes of imposing a duty. In both instances, officers do not undertake a duty to the victim’s family or friends.
B.
¶ 20 Just as “[p]ublic policy may support the recognition of a duty of care,” Gipson, 214 Ariz. at 145 ¶ 23, 150 P.3d at 232, policy considerations may militate against finding a duty in certain contexts. “When a court or legislature adopts a no-duty rule, it generally does so based on concerns that potential liability would chill socially desirable conduct or otherwise have adverse effects.” Id. at 146 ¶ 29, 150 P.3d at 233. Apart from the absence of a special relationship, in considering public policy ramifications, we conclude that the potential drawbacks of finding a duty in this case outweigh the potential benefits.
¶ 21 The Guerras contend — and the dissent apparently agrees — that a duty would exist even if officers inform next of kin, based on a preliminary but ongoing investigation, that a loved one “might” have died in an accident. According to the dissent, “the care that police exercised in carrying out the investigation matters once they undertake to communicate the results to next of kin.” Infra ¶ 40. But if this broad view of duty by undertaking were the law, everything law enforcement says to a victim’s family during the course of an investigation could then theoretically give rise to a cause of action by the victim or the victim’s family for negligent investigation. Cf Vasquez, 220 Ariz. at 313 ¶ 31, 206 P.3d at 762.
¶ 22 Imposing such a duty, at a minimum, would cause officers to delay in making NOK notifications. At worst, it may deter officers from sharing whatever information they have with anxious family members for fear of litigation and possible liability. Cf. Gipson, 214 Ariz. at 146 ¶ 29,150 P.3d at 233 (noting that the no-duty rule for social hosts is justified by concerns that “[h]olding social hosts liable for harm caused by guests to whom they serve alcohol might curb desirable social exchanges”); Wertheim v. Pima County, 211 Ariz. 422, 427 ¶ 20, 122 P.3d 1, 6 (App.2005) (noting that “[c]ourts traditionally fix the duty point by balancing factors,” among them “the proliferation of claims,” and “public policies affecting the expansion or limitation of new channels of liability”) (citation *188 and internal quotation marks omitted); Murillo v. Seymour Ambulance Ass’n, 264 Conn. 474, 823 A.2d 1202, 1206 (2003) (finding no duty by medical providers to bystanders witnessing medical procedures in part because of interest in “avoiding increased litigation”).
¶ 23 Medical research confirms that uncertainty or lack of information about a loved one’s status as dead or alive is traumatizing for most people. Pauline Boss, Ambiguous Loss Theory: Challenges for Scholars and Practitioners, 56 Fam. Rel. 105, 105 (2007); see also Pauline Boss et al., Healing Loss, Ambiguity, and Trauma: A Community-Based Intervention with Families of Union Workers Missing After the 9/11 Attack in New York City, 29 J. Marital & Fam. Therapy 455, 458 (2003) (describing ambiguous loss as “chronic trauma”). The lack of clarity may generate conflict, ambivalence, depression, anxiety and guilt, often manifested by not being able to move on with one’s life. Pauline Boss, Ambiguous Loss, in Living Beyond Loss: Death in the Family 237, 238 (Froma Walsh & Monica McGoldrick eds., 2d ed.2004). Inasmuch as prompt, open, and frank communication with distraught family members of potential crime or accident victims is both critical and considerate, imposing a duty in this context would contravene rather than advance public policy.
¶ 24 Conversely, holding that police have no duty in this context is unlikely to cause officers to be careless or cavalier in their investigations and NOK notifications. We expect that officers will continue to use great care to ensure that family members receive accurate and timely information in a supportive and sensitive manner. Nor is our holding likely to result in many similar claims going unredressed. Even the Guerras acknowledge the “rarity” of this case, noting that a recurrence of this sort of mistaken identification “appears as unlikely as getting struck by lightning.”
C.
¶ 25 The dissent would adopt Restatement (Third) of Torts: Liability for Physical and Emotional Harm § 47 (2012) (“Restatement Third”) to find that the DPS officers assumed a duty to the Guerras by delivering the NOK notification. Infra ¶ 34. The parties, however, never cited or argued that new provision in the trial court, the court of appeals, or this Court; nor did those other courts mention it. Regardless of the potential advantage or applicability of Restatement Third § 47 in eases such as this, it would be quite unusual and unwise for this Court to sua sponte adopt a new Restatement section that would significantly alter our jurisprudence without the benefit of any briefing or argument by the parties or amici. See Gipson, 214 Ariz. at 148 ¶ 41, 150 P.3d at 235 (Hurwitz, J., concurring) (expressing personal approval of Restatement Third § 7 but declining to recommend its adoption because neither party argued for it).
¶ 26 Although the dissent apparently restricts its proposed holding “to cases involving notifications to next of kin of a child or loved one’s death,” infra ¶ 31, Restatement Third § 47 is not so limited. But even were we to consider adopting Restatement Third § 47, it would not change our result. The comments to that section recognize that, “in the area of emotional harm, a court may decide that an identified and articulated policy is weighty enough to require the withdrawal of liability.” Restatement Third § 47 cmt. d. As discussed above, the strong public interest in encouraging officers’ timely communication with anxious family members of significant facts discovered through police investigations compels us to conclude that a no-duty rule in this narrow context is necessary and appropriate. We therefore hold, as a matter of policy, that the DPS officers did not assume a legal duty to the Guerras by undertaking to provide the NOK notification.
III.
¶ 27 For the foregoing reasons, we vacate ¶¶ 15-28 of the court of appeals’ opinion and its reinstatement of the Guerras’ negligence claim, and we affirm the superior court’s entry of summary judgment in favor of the State.