NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

DANIEL SANDOVAL and RICHARD SANDOVAL, by and through their
legal guardian, MARY LEWIS; JOSEPH GREENE and ALIYAH GREENE,
by and through their legal guardian and natural parent, LEE GREENE;
JANE RUDDELL, on her own behalf; RUSSELL WRIGHT, on his own
behalf, for the wrongful death of MELANIE GREENE, *Plaintiffs/Appellants*,

*v.*

THE CITY OF TEMPE, *Defendant/Appellee*.[1]

No. 1 CA-CV 14-0245
FILED 6-25-2015

Appeal from the Superior Court in Maricopa County
No. CV2012-006342
The Honorable Arthur T. Anderson, Judge

**AFFIRMED**

COUNSEL

Palumbo Wolfe & Palumbo PC, Phoenix
By Elliot G. Wolfe
*Counsel for Plaintiffs/Appellants*

---

[1] We amend the caption of this appeal to reflect only the parties pertinent
to this appeal. The parties shall use this caption in all further filings related
to this appeal.

Tempe City Attorney's Office, Tempe
By Judith R. Baumann
*Counsel for Defendant/Appellee City of Tempe*

---

## MEMORANDUM DECISION

Judge Donn Kessler delivered the decision of the Court, in which Judge Kenton D. Jones joined and Presiding Judge John C. Gemmill specially concurred.

---

**K E S S L E R**, Judge:

¶1 Plaintiffs/Appellants, the surviving parents and four minor children of Melanie Greene, appeal the trial court's order granting summary judgment in favor of Defendant/Appellee the City of Tempe ("the City"). For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

¶2 After a night of drinking, Ruben Flores and Anton Pyburn were so intoxicated they were unable to locate Flores' car. They called 911 to report that the vehicle had been stolen. Three officers from the Tempe Police Department bike squad responded and located the vehicle a couple blocks away.

¶3 Officer M. notified Flores that the vehicle had been located, but because he perceived that Flores was intoxicated, did not tell him where it was parked. Officer M. told Flores to take a cab home and return for his car when he was sober. Pyburn agreed that he would not drive. The officers then left the scene at the conclusion of the stolen vehicle investigation.

¶4 Flores and Pyburn walked to Jack-in-the-Box where they found the car and remained to eat. After eating, Pyburn believed himself to be sober and attempted to drive them home. When Pyburn realized he was still having trouble with basic motor functions, he stopped at a convenience store a few streets away. Flores then decided to drive. On the way home, Flores ran a red light and crashed into Greene's vehicle. The accident occurred approximately one hour after the officers had left Flores and Pyburn. Greene died from the injuries she sustained in the accident.

¶5          The Plaintiffs filed a complaint for negligence and wrongful death, which included an allegation that the City's  police officers were liable for negligently failing to arrest or detain Flores:

> The defendant CITY OF TEMPE officers negligently failed to arrest or detain Mr. Flores, or otherwise prevent him from driving, and negligently allowed him to leave the scene, and drive a vehicle, while intoxicated and under a suspended license for a prior D.U.I.[2]

The City moved to dismiss based on qualified immunity, which requires proof of gross negligence rather than ordinary negligence.  *See* Ariz. Rev. Stat. ("A.R.S.") § 12-820.02(A)(1) (2003) ("Unless a public employee acting within the scope of the public employee's employment intended to cause injury or was *grossly negligent*, neither a public entity nor a public employee is liable for . . . [t]he failure to make an arrest or the failure to retain an arrested person in custody." (emphasis added)).  The court granted the City's motion to dismiss as to the claim of ordinary negligence, but allowed Plaintiffs to amend their complaint to allege gross negligence.

¶6          After Plaintiffs amended the complaint to allege gross negligence, the City again moved for summary judgment, arguing there was no legal authority for the officers to arrest or detain Flores, and even if the officers had a duty to act, no reasonable jury could find their conduct to be grossly negligent.  In their response, the Plaintiffs acknowledged that the officers had no reasonable cause to arrest or detain Flores, expressly abandoned their claim for failure to arrest or detain Flores, and refined their claim that the officers failed to exercise reasonable care by ensuring that Flores did not drive his car while intoxicated, contending that such a claim only required proving negligence, not gross negligence:

> The [P]laintiffs agree that if they were making a claim that the [City's] officers were at fault for failing to make an arrest, the [City] would have qualified immunity under A.R.S. § 12-820.02 that would require the [P]laintiffs to prove gross negligence.  Discovery has revealed that the [City] does not have a law making it illegal to be publicly intoxicated. Without a statute or ordinance making it illegal to be drunk

---

[2] Although other parties were named as defendants in the complaint, the City is the only defendant pertinent to this appeal.

in public in the City of Tempe, the officers could neither arrest nor detain Mr. Flores or Mr. Pyburn.

Therefore, the [P]laintiffs are not pursuing their claim that the [City's] officers were at fault for failing to arrest Flores and/or Pyburn, and A.R.S. § 12-820.02 does not apply.

*Instead, this is simply a case in which the [P]laintiffs are alleging that the officers did not meet the standard of care required of reasonably prudent police officers in taking steps to protect two obviously intoxicated individuals from foreseeably injuring themselves or others. That claim only requires proof of ordinary, not gross, negligence.*

(Emphasis added.) Plaintiffs subsequently moved to amend the complaint to conform to the evidence.

¶7 Following oral argument, the trial court found that the officers' failure to investigate or arrest cannot support an ordinary negligence claim and the Plaintiffs conceded that they could not show gross negligence in the absence of a statutory violation. As a result, the court granted the City's motion for summary judgment, certifying the judgment under Arizona Rule of Criminal Procedure 54(b). Plaintiffs timely appealed, and we have jurisdiction pursuant to A.R.S. § 12-2101(A)(1) (Supp. 2014).

**ISSUES AND STANDARD OF REVIEW**

¶8 On appeal, Plaintiffs argue the trial court erred by granting the City summary judgment and affording the City qualified immunity for the Plaintiffs' refined claims that did not assert the failure to arrest or retain Flores and Pyburn in custody. *See supra* ¶ 6. The City argues its officers owed no duty to prevent Flores from injuring himself or anyone else and that the evidence was insufficient to show its officers fell below a reasonable standard of care.

¶9 We review a summary judgment *de novo*, "determin[ing] independently whether there are any genuine issues of material fact and whether the trial court erred in its application of the law." *Valder Law Offices v. Keenan Law Firm*, 212 Ariz. 244, 249, ¶ 14, 129 P.3d 966, 971 (App. 2006). "[W]e view the evidence in a light most favorable to the party against whom judgment was granted," *Desilva v. Baker*, 208 Ariz. 597, 600, ¶ 10, 96 P.3d 1084, 1087 (App. 2004), but we will affirm the entry of summary judgment if it is correct for any reason, *Hawkins v. State*, 183 Ariz. 100, 103, 900 P.2d

1236, 1239 (App. 1995). We review issues of statutory interpretation *de novo*. *Haag v. Steinle*, 227 Ariz. 212, 214, ¶ 9, 255 P.3d 1016, 1018 (App. 2011).

## DISCUSSION

**¶10** Plaintiffs argue the trial court erred by granting summary judgment to the City based on qualified immunity under A.R.S. § 12-820.02, which would require Plaintiffs to prove gross negligence. We agree that because Plaintiffs abandoned their theory that the officers were negligently investigating a crime, but performing essentially a caretaking function, they only had to show ordinary negligence to withstand summary judgment. However, we affirm the judgment because Plaintiffs failed to present an objectively based or enforceable standard of care against which the officers' conduct could be measured by a jury.

**¶11** In 1984, the legislature enacted the Actions Against Public Entities or Public Employees Act, *see* A.R.S. §§ 12-820 to -823 (2003 and Supp. 2014),[3] which "codified various common law doctrines that conferred absolute and qualified immunity on various public entities and employees" and "permitted governmental entities and their employees to raise affirmative defenses in actions sounding in tort," *City of Tucson v. Fahringer*, 164 Ariz. 599, 600-01, 795 P.2d 819, 820-21 (1990). "In that act, the legislature delineated several specific acts for which public entities and employees are extended a qualified immunity." *Greenwood v. State*, 217 Ariz. 438, 442, ¶ 14, 175 P.3d 687, 691 (App. 2008). "Because immunity is the exception to the general rule, we narrowly construe immunity provisions that are applicable to governmental entities." *DeVries v. State*, 221 Ariz. 201, 204, ¶ 9, 211 P.3d 1185, 1188 (App. 2009). "We may not, however, construe an immunity provision so narrowly as to abrogate the legislature's grant of immunity." *Greenwood*, 217 Ariz. at 443, ¶ 16, 175 P.3d at 692.

**¶12** Below, Plaintiffs expressly abandoned their claim that the officers were negligent for failing to arrest or detain Flores, conceding they could not show gross negligence. Instead, they argued the "officers failed to exercise reasonable care to protect [Flores], his passenger and the public from a substantial and foreseeable risk of injury by seeing that [Flores] got into a taxi, or got a ride, so that he would not drive his own car in the highly intoxicated state known to the officers."

---

[3] We cite to the current versions of statutes when no changes material to this decision have since occurred.

**¶13** We agree with Plaintiffs this described conduct is "totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute," *Cady v. Dombrowski*, 413 U.S. 433, 441 (1973).[4] Given our duty to narrowly construe A.R.S. § 12-820.02(A)(1), we conclude the City is not entitled to qualified immunity for simply failing to ensure Flores and Pyburn did not get into the car and drive away, thus endangering others. Rather, Plainitffs' amended theory of liability falls within the officers' community caretaking function. Under this function, police officers are "expected to aid those in distress, combat actual hazards, prevent potential hazards from materializing, and provide an infinite variety of services to preserve and protect community safety." *State v. Mendoza-Ruiz*, 225 Ariz. 473, 475, ¶ 9, 240 P.3d 1235, 1237 (App. 2010); *see also Ortiz v. State*, 24 So.3d 596, 600 (Fla. Dist. Ct. App. 2009) ("Caretaking functions are performed by police officers because we expect them to take those steps that are necessary to 'ensure the safety and welfare of the citizenry at large.'" (citation omitted)). The clear language of A.R.S. § 12-820.02(A)(1) does not grant qualified immunity to law enforcement for conduct during the exercise of their community caretaking functions. Accordingly, Plaintiffs would only be required to prove ordinary, and not gross, negligence.

**¶14** This does not end our inquiry, however, because we can affirm the trial court on any basis supported by the record. *Hawkins*, 183 Ariz. at 103, 900 P.2d at 1239. Given the arguments on appeal, we must address whether the officers had any duty to prevent Flores from driving the car and whether Plaintiffs established the officers breached any enforceable standard of care. "To establish a claim for negligence, a plaintiff must prove four elements: (1) a duty requiring the defendant to conform to a certain standard of care; (2) a breach by the defendant of that standard; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual damages." *Gipson v. Kasey*, 214 Ariz. 141, 143, ¶ 9, 150 P.3d 228, 230 (2007).[5] In this context, duty is a general obligation, recognized by law, requiring a defendant to conform to a particular standard of care to protect others from an unreasonable risk. *Id.* at ¶¶ 9-10; *see also Vasquez v. State*, 220 Ariz. 304, 313-15, ¶¶ 30-35, 206 P.3d 753, 762-64

---

[4] If Plaintiffs had asserted that the alleged negligence arose out of a failure to properly investigate a crime, the police had no duty to them. *See Guerra v. State*, 348 P.3d 423, 426, ¶ 13 (Ariz. 2015).

[5] Given the facts of this case, it would appear that a serious question exists whether any failure of the police to ensure Flores and Pyburn did not get into a car and drive was the proximate cause of the death. However, the parties did not address that issue below or on appeal.

(App. 2008) (stating duty is determined as a matter of law and not based on specific facts in the case). In contrast, the standard of care is what the defendant must do or not do to satisfy that duty. *Gipson*, 214 Ariz. at 143, ¶ 10, 150 P.3d at 230. Although the standard of care depends on the particular facts of the case, *id.*, summary judgment is appropriate if no reasonable jury could find that the standard of care was breached or the breach proximately caused the harm, *id.* at n.1, ¶ 9. We will affirm summary judgment if no reasonable jury could find that an enforceable standard of care was breached. *Id.*

¶15 Whether a duty exists is a threshold issue and a matter of law for courts to decide. *Id.* at ¶ 9. In determining whether a duty exists, Arizona courts no longer consider whether the risk of harm to a person was foreseeable. *Id.* at 144, ¶ 15, 150 P.3d at 231. "As a general matter, there is no duty to prevent a third person from causing physical harm to another unless the defendant stands in a special relationship with the third person or with the victim that gives the victim a right to protection." *Barkhurst v. Kingsmen of Route 66, Inc.*, 234 Ariz. 470, 473, ¶ 10, 323 P.3d 753, 756 (App. 2014) (citing Restatement (Second) of Torts § 315 (1965)). "Duties of care may arise from special relationships based on contract, family relations, or conduct undertaken by the defendant." *Guerra v. State*, 348 P.3d 423, 425, ¶ 8 (Ariz. 2015). "A special or direct relationship, however, is not essential in order for there to be a duty of care." *Gipson*, 214 Ariz. at 145, ¶ 18, 150 P.3d at 232. "In the absence of a special or direct relationship, public policy considerations may support the existence of a legal obligation." *Barkhurst*, 234 Ariz. at 473, ¶ 10, 323 P.3d at 756.

¶16 We conclude a duty existed for the officers to protect the public in this case based on the officers' caretaking function and Tempe Police Department's assumption of a duty to prevent crime. In *Austin v. City of Scottsdale*, the Arizona Supreme Court noted that public officers and employees must be held accountable for negligent acts performed during their official duties. 140 Ariz. 579, 581-82, 684 P.2d 151, 153-54 (1984). When law enforcement performs a caretaking function, opting to provide police protection to foster public safety, public policy supports the formation of a generalized duty:

> Crime prevention, though a primary function, is not the sole responsibility of such agencies; they routinely perform such broader protective functions as directing traffic, aiding motorists, assisting in medical emergencies, and investigating accidents. . . . Law enforcement agencies perform all such activities subject to the duty that *Austin* described: "to act as

would a reasonably careful and prudent police [agency] in the same circumstances."

*Newman v. Maricopa County*, 167 Ariz. 501, 503, 808 P.2d 1253, 1255 (App. 1991) (alteration in original) (quoting *Austin*, 140 Ariz. at 581-82, 684 P.2d at 153-54); *see also State v. Miller*, 112 Ariz. 95, 97, 537 P.2d 965, 967 (1975) ("A policeman has the duty to be alert to suspicious circumstances and to investigate if necessary, provided that he is acting within constitutional limitations."); *McDonald v. City of Prescott*, 197 Ariz. 566, 568, ¶ 14, 5 P.3d 900, 902 (App. 2000) (finding that although a police officer is generally not responsible for road maintenance *per se*, when an officer opts to provide police protection he has a duty to act as would reasonably prudent officers in the same circumstances); *cf. Stanley v. McCarver*, 208 Ariz. 219, 223, ¶ 14, 92 P.3d 849, 853 (2004) (imposing a duty even though there was no traditional doctor-patient relationship between the parties, because the doctor undertook a professional obligation with respect to the patient's well-being, and "public policy is better served by imposing a duty in such circumstances to help prevent future harm").

**¶17**        Nothing in our decision on duty is in conflict with the reasoning of the Arizona Supreme Court in *Guerra*. There, the court held that police officers do not have a duty to accurately report the identity of a deceased person to the next of kin. *Guerra*, 348 P.3d at 424, ¶ 1. In reaching that decision, the court held in part that to the extent the claim was that the police officers had negligently investigated a crime to reveal a nurse's misidentification of a victim, no duty of care existed under *Vasquez*, 220 Ariz. 304, 206 P.3d 753 and *Morton v. Maricopa County*, 177 Ariz. 147, 865 P.2d 808 (App. 1993). *Guerra*, 348 P.3d at 426-27, ¶¶ 13, 16. The issue here, however, is one of performing a caretaking function, not an investigatory crime process.

**¶18**        Here, in addition to the public policy for police officers to undertake caretaking duties to protect the public from danger, the Tempe Police Department assumed a duty to proactively prevent crime. The Tempe Police Department's Strategic Plan, which "serve[s] to guide the activities and direction of the Department and provide a foundation for decision-making," provides that one of the Department's strategic goals is to "promote proactive crime prevention." City of Tempe, *Tempe Police Department's 2012-2014 Strategic Plan*, at 3-4, http://tempe.gov/home/showdocument?id=3929 (last visited June 19,

2015).[6] As a result, where police officers are called out for a possible crime, and later determine there is a public safety issue, the officers have a duty to provide safety and "act as would a reasonably careful and prudent police department in the same circumstances." *Austin*, 140 Ariz. at 581-82, 684 P.2d at 153-54.

**¶19** This generalized duty is not without limits. As the supreme court has noted, the generalized duty to protect the public "is not a duty to protect each citizen within the [city's] geographic boundaries from all harms. By establishing a police department, a municipality becomes neither a general insurer of safety nor absolutely liable for all harms to its citizens." *Id*. at 582 n.2, 684 P.2d at 154 n.2.; *accord Vasquez*, 220 Ariz. at 313, ¶ 29, 206 P.3d at 762; *see also Guerra*, 348 P.3d at 426, ¶ 13 (stating police officers owe no duty to victims or their families when investigating crimes or accidents). Here, we are not dealing with a generalized duty to protect the public against any danger. Rather, the record viewed most strongly in favor of Plaintiffs on summary judgment shows that the officers involved knew Flores and Pyburn were too drunk to drive, told them not to drive but to take a cab and left the pair within a few blocks of the car, knowing that they were looking for their car. Given these facts on summary judgment, we conclude that the officers had some duty to protect the public from possible drunk drivers.

**¶20** However, the next question we must answer is whether on summary judgment Plaintiffs have shown that there is an articulable standard of care that was breached. As we note above, summary judgment is appropriate on standard of care when no reasonable jury would conclude that there was a breach of an articulable or objectively measurable standard of care. *Gipson*, 214 Ariz. at 143 n.1, ¶ 9, 150 P.3d at 230 n.1; *District of Columbia v. Carmichael*, 577 A.2d 312, 314-16 (D.C. 1990) (holding that in municipal liability case, expert must present an objectively determinable standard of care against which a jury can determine whether the defendants fell below that standard). Plaintiffs have not met their burden to show the standard of care.

---

[6] We take judicial notice of this manual. *See State v. Rojers*, 216 Ariz. 555, 560, ¶ 26, 169 P.3d 651, 656 (App. 2007) (holding that a court can take judicial notice of an agency's published manuals); Ariz. R. Evid. 201(b)(2) ("The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.").

¶21     Plaintiffs relied upon their expert to articulate the standard of care. However, that expert conceded the officers could not arrest Flores and Pyburn, could not detain the pair on the possibility of them committing a future crime, and had no authority to require them to take a cab. Rather, Plaintiffs' expert stated that the officers should have simply followed Flores and Pyburn to make sure that they called a cab or had a cab called for them, rather than simply leave them after the officers had located, but not directed the pair to the car.[7] However, the Plaintiffs' expert had never seen any generalized police policy or orders that would have required this conduct. The expert also stated he could not articulate a time period for which the officers would have to remain with Flores and Pyburn to ensure they called a cab or a friend for a ride.

¶22     As such, Plaintiffs' expert testimony is similar to the subjective standard rejected by the court in *Carmichael.* In *Carmichael,* the plaintiffs sued the District of Columbia after being stabbed while incarcerated. 577 A.2d at 312. Plaintiffs argued that the District failed to control the supply of contraband weapons and relied on an expert witness to state a standard of care. *Id.* In reversing the judgment for the plaintiffs, the court of appeals held that the District was entitled to a judgment as a matter of law because the expert's standard of care was based solely on his own subjective opinions and not any objectively determinable basis against which a factfinder could measure the District's conduct. *Id.* at 314-15. In *Carmichael*, the expert testified that any number of knives or nonworking metal detectors violated a standard of care, but did not base this opinion on an objective foundation or concrete criteria. *Id.* at 315. As the court characterized the testimony, the expert opinion was based on "his own experience and on anecdotal observations . . . but failed to provide any basis in his testimony by which *the jury* could determine what the standard of care was and how the District's conduct deviated from it. . . . For all we know, [the expert] may have had an objective standard in mind when he testified, but he never communicated it to the jury. . . . Without sufficient

_____

[7] Plaintiffs' expert also opined that the police should have run a motor vehicle check on the pair, at which time they would have found that both of their drivers' licenses had been suspended. However, we view that conduct as part of a police investigation of criminal activity which might have led to the failure to arrest the pair, conduct for which the police had no duty to Plaintiffs. *See Guerra*, 348 P.3d at 426, ¶ 13. In any event, in that case, if there was any duty, the City was entitled to qualified immunity and Plaintiffs expressly stated they could not prove gross negligence.

proof of the standard of care, appellees' case should never have gone to the jury." *Id*. at 315-16.

**¶23**    We see no distinction between the standard of care testimony in *Carmichael* and this case.  As noted previously, Plaintiffs' expert opined that the officers should have followed the inebriated pair or called them a cab.  However, he could not cite to any policy or order which would require such conduct and could not articulate a time period for which the officers should have followed the pair.  They also disclaimed any standard of care that the officers should have waited to see if Flores and Pyburn got to their car and then arrested them when they entered.   No reasonable jury could conclude that there was an enforceable or objective standard of care on such a theory. Simply put, this is not sufficient for a cognizable, enforceable or objectively determinable standard of care.

## CONCLUSION

**¶24**    For the foregoing reasons, we affirm.

G E M M I L L, Judge, specially concurring:

**¶25**    I agree with the majority decision that the summary judgment in favor of the City of Tempe should be affirmed because the plaintiffs did not present an objectively enforceable standard of care against which the police conduct could be measured by a jury. *See supra* ¶ 23. As the majority has determined, summary judgment on the issue of standard of care is appropriate "when no reasonable jury would conclude that there was a breach of an articulable or objectively measurable standard of care." *See supra* ¶ 20.  Affirming summary judgment on this basis resolves the appeal and I take no position on the issue of duty presented herein.  It is for this reason that I write separately.



Ruth A. Willingham · Clerk of the Court
F I L E D : ama