NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

SANDRA SCHIAGER, *Plaintiff/Appellant*,

*v.*

LANDMARK LAND MANAGEMENT, *Defendant/Appellee*.

No. 1 CA-CV 20-0226
FILED 3-9-2021

Appeal from the Superior Court in Maricopa County
No. CV 2017-014321
The Honorable Danielle J. Viola, Judge

**AFFIRMED**

COUNSEL

Brown Engstrand & Shely Accident Law Group, Tempe
By Robert W. Shely
*Counsel for Plaintiff/Appellant*

Jones Skelton & Hochuli PLC, Phoenix
By Lori L. Voepel, Alejandro Barrientos
*Counsel for Defendant/Appellee*

---

**MEMORANDUM DECISION**

Judge Jennifer B. Campbell delivered the decision of the Court, in which Presiding Judge D. Steven Williams and Judge James B. Morse Jr. joined.

---

**C A M P B E L L**, Judge:

¶1        Sandra Schiager appeals from the superior court's summary judgment dismissing her negligence claim against Landmark Land Management ("Landmark"). For the following reasons, we affirm.

## BACKGROUND

¶2        While attending an outdoor event held at a recreational property ("the property") managed by the Salt River Project Employee's Recreational Association, Inc. ("PERA"), Schiager stepped off the cement floor of a ramada onto the surrounding grass. As she did so, Schiager's left foot sank into an "unseen" six-inch-deep depression in the ground, causing her to fall and fracture her left ankle. Four days later, she underwent surgery, which included the placement of 11 pins and screws and a metal plate to repair the ankle.

¶3        Schiager filed a negligence claim against PERA, alleging PERA owed her, a business invitee, a non-delegable duty to maintain the property in a reasonably safe condition. In an amended complaint, Schiager added a negligence claim against Landmark, alleging that by virtue of its contract with PERA, to provide regular lawn and landscaping services for the property, Landmark owed a duty "to foreseeable users" of the property, such as herself, to discover the subsidence and alleviate its risk of harm. She further alleged that Landmark mowed the property in a manner that concealed the subsidence, aggravating the danger.

¶4        Landmark answered, denying liability, and moved for summary judgment. Specifically, Landmark asserted that it "owed no legal duty" to Schiager. In response, Schiager argued that Landmark, "in the course and scope of its landscaping duties . . . , hid a pre-existing hazard from foreseeable users."

¶5        After oral argument on the motion, the superior court granted summary judgment in favor of Landmark, agreeing that it owed no duty to Schiager and her negligence claim failed as a matter of law. Following that

ruling, Landmark submitted its verified statement of costs, asserting it was entitled to recover, among other things, its share of mediation expenses. Schiager objected to Landmark's inclusion of the mediator's fees, citing the mediator's letter to counsel, which stated, "unless the parties direct me otherwise, I will send a statement representing a pro rata portion of the total to counsel for each of the parties at the conclusion of the hearing." Because no party objected, Schiager argued that the parties agreed to split the mediation expenses and Landmark's share of the mediator's fees therefore were not recoverable. Without disputing the content of the mediator's letter, Landmark contended that the mediation expenses were, in fact, recoverable as taxable costs.

¶6            Overruling Schiager's objection, the superior court awarded Landmark its requested costs and entered a final judgment in its favor. Schiager timely appealed.

## DISCUSSION

### I.      Summary Judgment Ruling

¶7            Schiager challenges the superior court's summary judgment ruling. She contends that Landmark owed a duty to PERA's business invitees to inspect the property and remove any hazards.

¶8            In reviewing a grant of summary judgment, we view the facts and the reasonable inferences to be drawn from those facts in the light most favorable to the non-moving party and affirm "if the evidence produced in support of the defense or claim has so little probative value that no reasonable person could find for its proponent." *State Compensation Fund v. Yellow Cab. Co.*, 197 Ariz. 120, 122, ¶ 5 (App. 1999). "We review *de novo* the [superior] court's application of the law and its determination whether genuine issues of material fact preclude summary judgment." *Id.*; *see also* Ariz. R. Civ. P. 56(a) ("The court shall grant summary judgment if the moving party shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law."). We will affirm the court's "decision if it is correct for any reason, even if that reason was not considered by the [] court." *Glaze v. Marcus*, 151 Ariz. 538, 540 (App. 1986).

¶9            "To establish a claim for negligence, a plaintiff must prove four elements: (1) a duty requiring the defendant to conform to a certain standard of care; (2) a breach by the defendant of that standard; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual damages." *Gipson v. Kasey*, 214 Ariz. 141, 143, ¶ 9 (2007). While

breach, causation, and damages "are factual issues usually decided by [a] jury," the "first element, whether a duty exists," is a question of law that we review de novo. *Id*. at ¶ 10; *see also Guerra v. State*, 237 Ariz. 183, 185, ¶ 7 (2015).

¶10 "Whether the defendant owes the plaintiff a duty of care is a threshold issue; absent some duty, an action for negligence cannot be maintained." *Gipson*, 214 Ariz. at 143, ¶ 11. A duty is an "obligation, recognized by law, which requires the defendant to conform to a particular standard of conduct in order to protect others against unreasonable risks of harm." *Id*. at ¶ 10 (quotation omitted). "The existence of a duty of care is a distinct issue from whether the standard of care has been met in a particular case." *Id*.

¶11 "As a legal matter, the issue of duty involves generalizations about categories of cases." *Id*. "Thus, a conclusion that no duty exists is equivalent to a rule that, for certain categories of cases, defendants may not be held accountable for damages they carelessly cause, no matter how unreasonable their conduct." *Id*. at 143–44, ¶ 11.

¶12 "Duties of care may arise from special relationships based on contract, family relations, or conduct undertaken by the defendant," as well as from public policy considerations. *Id*. at 145, ¶¶ 18, 23. "Foreseeability of harm is not a relevant consideration in determining the threshold legal issue of whether a duty exists, nor are case-specific facts." *Guerra*, 237 Ariz. at 183, 185, ¶ 8; *see also Quiroz v. ALCOA Inc.*, 243 Ariz. 560, 563, ¶ 2 (2018); *Gipson*, 214 Ariz. at 144, ¶ 15.

¶13 Under the terms of its written contract with PERA, Landmark agreed to provide weekly lawn services ("mow grass") and "maintain landscaping" on the 83-acre property. As outlined in its landscaping bid, which was incorporated by reference into the lawn-and-landscaping services contract, the scope of Landmark's work was limited to "provid[ing] and furnish[ing] all horticultural supervision, labor, material, equipment and transportation required to maintain the landscape." Given the agreement's terms, Landmark, without question, owed PERA a duty to perform its contracted services in a non-negligent manner. *See Gipson*, 214 Ariz. at 145, ¶ 18. But nothing in the lawn-and-landscaping-services contract extended that duty of care to PERA's business invitees.

¶14 Acknowledging that Landmark owed her no contractual duty of care, Schiager first argues that Landmark owed her a duty based on its "exclusive control" over the property. As support for this contention,

Schiager cites *Martinez v. Woodmar IV Condominiums Homeowners Ass'n*, 189 Ariz. 206, 224 (1997), in which the Arizona Supreme Court found the defendant homeowners' association owed a duty of reasonable care to invitees to maintain the safety of its common areas.

**¶15**        To have "actual control over premises," a party "must have the authority to: (1) exclude others from the premises; and (2) direct how the premises is repaired, maintained, and used." *Dabush v. Seacret Direct LLC*, 250 Ariz. 264, 269, ¶ 18 (2021). "Both the authority to exclude others and control over repairs are necessary to impose a duty of care on a possessor of land." *Id.* at ¶ 19.

**¶16**        Unlike the homeowners' association in *Martinez*, which exercised exclusive control over the premises at issue in that case, Landmark did not exercise control over the property here. 189 Ariz. at 209–10 ("[W]ith respect to common areas under its exclusive control, a condominium association has the same duties as a landlord[,] . . . [including] a duty to maintain the common areas it controls in a safe condition and protect both owners and their guests from dangerous conditions."). Put simply, there is no question that Landmark lacked authority to exclude Schiager, or any other PERA invitee, from the property. Equally important, Landmark had no power to direct the repair, maintenance, or use of the property beyond the scope of its own services. Of particular relevance to this case, PERA, not Landmark, hired an electrical contractor to dig a utility trench and install an electrical conduit to the ramada and PERA, not Landmark, oversaw the backfill of that trench, which likely caused the subsidence at issue.

**¶17**        Because Schiager and Landmark have neither a contractual relationship nor any other relationship specifically recognized by common law or created by public policy, *Quiroz*, 243 Ariz. at 563, 565, ¶¶ 2, 13, the issue before us is whether Landmark, by undertaking lawn maintenance services on the property, *assumed* a duty to PERA's invitees. *Gipson*, 214 Ariz. at 145, ¶ 18; *Quiroz*, 243 Ariz. at 565, ¶ 14.

**¶18**        "Arizona recognizes a cause of action for negligent performance of an undertaking as it is summarized in the Restatement (Second) of Torts." *Steinberger v. McVey ex rel. County of Maricopa*, 234 Ariz. 125, 137, ¶ 45 (App. 2014); *Quiroz*, 243 Ariz. at 565, ¶ 14; *see also Lips v. Scottsdale Healthcare Corp.*, 224 Ariz. 266, 268, ¶ 10 (2010) ("[T]he common law imposes a duty of reasonable care on a party who voluntarily undertakes to protect persons or property from physical harm."); *Lloyd v. State Farm Mut. Auto. Ins. Co.*, 176 Ariz. 247, 250 (App. 1992) ("When a

person voluntarily undertakes an act, even when there is no legal duty to do so, that person must perform the assumed duty with due care and is liable for any lack of due care in performing.").

¶19        Under Restatement (Second) of Torts §§ 323 and 324A (1965), a party may assume a duty to act with reasonable care "by undertaking (with or without a formal relationship) to perform services" for another, *Acri v. State*, 242 Ariz. 235, 240, ¶ 17 (App. 2017), even though the party "otherwise had no duty to do so." *Steinberger*, 234 Ariz. at 137, ¶ 46; *see also Barnum v. Rural Fire Protection Co.*, 24 Ariz. App. 233, 237 (1975) (explaining a duty arises "by reason of an affirmative undertaking by one who, under the circumstances, has no duty to act"). Restatement § 323 states:

> One who *undertakes*, gratuitously or for consideration, *to render services to another* which he *should recognize as necessary for the protection of the other's person* or things, *is subject to liability to the other* for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if (a) his failure to exercise such care increases the risk of such harm, or (b) the harm is suffered because of the other's reliance upon the undertaking.

(Emphasis added.) Restatement § 324A likewise provides for the voluntary assumption of a duty:

> One who *undertakes*, gratuitously or for consideration, *to render services to another* which he *should recognize as necessary for the protection of a third person* or his things, *is subject to liability to the third person* for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if (a) his failure to exercise reasonable care increases the risk of such harm, or (b) he has undertaken to perform a duty owed by the other to the third person, or (c) the harm is suffered because of reliance on the other or the third person upon the undertaking.

(Emphasis added.)

¶20        Considering Restatement § 323, Schiager does not allege that Landmark undertook to render services *to her*, personally, and the record reflects that Landmark contracted only to provide services to PERA, not PERA's invitees. Therefore, because Landmark did not undertake any action directly on Schiager's behalf, Restatement § 323 does not apply in this case. *See U.S. Airways, Inc. v. Qwest Corp.*, 238 Ariz. 413, 421, ¶ 30 (App.

2015), *ordered depublished in part on other grounds by U.S. Airways, Inc. v. Qwest Corp.*, 241 Ariz. 182 (2016).

**¶21**　　　　To maintain a claim for negligence predicated on an undertaking of services pursuant to Restatement § 324A, Schiager was required to allege that: (1) Landmark undertook to render services to PERA that it should have recognized were necessary to protect PERA's business invitees, such as herself, (2) Landmark failed to exercise reasonable care while performing the services, thereby increasing her risk of harm, and (3) she was in fact harmed by Landmark's actions. Restatement § 324A; *see also Steinberger*, 234 Ariz. at 137, ¶ 48.

**¶22**　　　　Relying primarily on *Nelson v. Grahawk Properties L.L.C.*, 209 Ariz. 437 (App. 2004), Schiager contends that landscapers, generally, are liable to third parties for negligent services that cause injury, and that Landmark, specifically, is liable to her because it both failed to detect the subsidence and mowed the grass in a manner that concealed it. *Nelson* involved a property development for residential and commercial use. *Id.* at 438, ¶ 2. To obtain municipal approval for the project, the developer "was required" to dedicate a right-of-way intersection to the municipality, construct certain roadways and related improvements, and maintain landscaping for the right-of-way after its dedication. *Id.* Although its plans for the intersection included a traffic signal, the developer installed median landscaping before the traffic light was installed. *Id.* at ¶ 3. Thereafter, the plaintiff was injured in an automobile accident at the intersection and alleged that "sight-obscuring landscaping," in combination with "no operational traffic signal," created an unreasonably dangerous condition that prevented him from seeing an approaching motorcyclist before their vehicles collided. *Id.* at 438–39, ¶¶ 4–5. On appeal, this court reversed the superior court's entry of summary judgment in favor of the developer, concluding the local municipality's non-delegable duty did not, as a matter of law, shield the developer from liability. *Id.* at 440–41, ¶¶ 14–15.

**¶23**　　　　While *Nelson* supports the proposition that Landmark is not absolved of liability simply because PERA, as the property owner, owes a non-delegable duty of care to its invitees to maintain the property in a reasonably safe manner, it does not, as Schiager contends, stand for the proposition that a landscaper owes a general duty of care to third parties. And, unlike the property developer in *Nelson*, Landmark neither shared control of the property at issue nor created the dangerous condition that

caused injury—the subsidence. Therefore, Schiager's reliance on *Nelson* is misplaced.[1]

**¶24** Schiager has not alleged that Landmark knew of the subsidence before she fell. Instead, she asserts that Landmark owed invitees a duty to inspect the property and discover and remedy the hazard. Therefore, the dispositive question is whether Landmark, by undertaking mowing and landscaping services for PERA, assumed a duty to inspect the 83-acre property to ensure no potential dangers befell a PERA invitee.

**¶25** We conclude that Landmark did not owe PERA's invitees a duty to inspect the property for hazards. In reaching this conclusion, we find *Diaz v. Phoenix Lubrication Service*, 224 Ariz. 335 (App. 2010), instructive. In *Diaz*, the plaintiff took a vehicle to the defendant for an oil change service that included a check of the vehicle's tire pressure. *Id*. at 337, ¶ 2. The plaintiff did not purchase separate tire rotation or inspection services. *Id*. A short time later, the plaintiff lost control of the vehicle and attributed the accident to "the worn condition of the tread" of the tires. *Id*. at ¶ 3. After the plaintiff filed a negligence claim against various parties, the defendant was named as a non-party at fault based on its failure to inspect the tires during the oil change. *Id*. at ¶ 6. The superior court granted the defendant's motion for summary judgment, finding the defendant did not owe the plaintiff a duty to inspect the vehicle's tires. *Id*. at 337–38, ¶ 8. On appeal, this court affirmed, rejecting the plaintiff's contention that the defendant owed a duty to inspect the vehicle for hazards. *Id*. at 339, ¶ 15.

**¶26** Under the plain language of Restatement § 324A, the scope of a party's assumed duty to a third party is clearly limited to the services it *undertook to render* to "another." In this case, Landmark contracted with

---

[1] We find no merit to Schiager's claim that the superior court violated her due process rights by distinguishing *Nelson* on a basis neither advanced by Landmark nor mentioned by the court at oral argument. Due process guarantees a party notice and an opportunity to be heard. *Wales v. Ariz. Corp. Comm'n*, 249 Ariz. 263, 267, ¶ 9 (App. 2020) ("To comply with due process, a party must have had notice and an 'opportunity to be heard at a meaningful time and in a meaningful manner.'") (citation omitted). Here, Schiager received both. At oral argument, Schiager's attorney argued his interpretation of *Nelson* at length. Moreover, contrary to Schiager's contention, a court's interpretation and application of case law is not constrained by the parties' framing. To be clear, a court may independently assess whether a case is controlling or distinguishable and is not bound by the interpretations offered by counsel.

PERA to provide mowing and landscaping services for the property. Because Landmark did not undertake to inspect the 83-acre property for unseen hazards, Restatement § 324A did not impose a duty on it to inspect with care. Furthermore, to the extent Schiager contends that Landmark is liable because it mowed the lawn in a way that concealed the subsidence (meaning the grass in the subsidence was taller than the grass in the surrounding areas so the overall height of the grass appeared uniform), she has not offered any evidence that Landmark *should have recognized* a need to mow the grass in a manner that protected third parties, as required to establish an assumed duty under Restatement § 324A. In other words, absent evidence that Landmark knew of the subsidence, there is no basis to conclude that its method of mowing the grass to achieve a uniform appearance was in any way negligent. Therefore, because Landmark owed Schiager no duty to inspect the property, the superior court did not err by granting summary judgment in Landmark's favor.

## II.    Award of Mediation Fees as Taxable Costs

¶27        Schiager challenges the superior court's award of mediation expenses as taxable costs. She contends the court should have upheld the parties' pre-mediation agreement "to split" the mediation fees.

¶28        "A party to a civil action cannot recover its litigation expenses as costs without statutory authorization." *Reyes v. Frank's Serv. & Trucking, LLC*, 235 Ariz. 605, 608, ¶ 6 (App. 2014) (quoting *Schritter v. State Farm Mut. Auto. Ins. Co.*, 201 Ariz. 391, 392, ¶ 6 (2001). As identified in A.R.S. § 12-332(A)(6), taxable costs include "disbursements that are made or incurred pursuant to an order or agreement of the parties." "Whether a particular expenditure qualifies as a taxable cost is a question of law that we review de novo." *Reyes*, 235 Ariz. at 608, ¶ 6.

¶29        As recognized in *Reyes*, "the relevant inquiry" under A.R.S. § 12-332(A) "is whether the parties agreed to incur the costs, not whether they reached a specific agreement about how the costs would ultimately be classified." 235 Ariz. at 612, ¶¶ 28–29 (upholding an award of mediation expenses under A.R.S. § 12-332(A), noting the parties "initially" agreed to share the expense of mediation but "did not specify how the mediation costs would be treated at the conclusion of the litigation").

¶30        Here, the parties do not contest that they agreed to attend mediation. Although Schiager asserts that she proceeded to mediation with the understanding that each party would bear its share of the mediation expenses, like the litigants in *Reyes*, the parties did not specify how the costs

9

would be allocated at the conclusion of the litigation if the dispute was not resolved through mediation. Therefore, under these circumstances, the mediation expenses were properly awarded as taxable costs under A.R.S. § 12-332(A).

## CONCLUSION

**¶31** For the foregoing reasons, we affirm the superior court's summary judgment in favor of Landmark. We award Landmark its costs incurred on appeal, conditioned upon compliance with ARCAP 21.



AMY M. WOOD • Clerk of the Court
FILED: AA