394 P.3d 660

Gordon ACRI, et al.,
Plaintiffs/Appellants,

v.

STATE of Arizona, et al.,
Defendants/Appellees.

Chuck Overmyer and Nina Bill Overmyer, both as individuals and as representatives of a class consisting of all of the residents of Yarnell, Glen Ilah, Peeples Valley, and the surrounding geographical area who suffered damages as a result of the Yarnell Hill Fire, Plaintiffs/Appellants,

v.

State of Arizona, a public entity; and the Arizona State Forestry Division, a public entity, Defendants/Appellees.

Nos. 1 CA–CV 15–0349, 1 CA–CV 15–0350

Court of Appeals of Arizona,
Division 1.

FILED 3/30/2017

Knapp & Roberts, PC, Scottsdale, By Craig A. Knapp, Dana R. Roberts, David L. Abney, Counsel for Plaintiffs/Appellants

Arizona Attorney General's Office, Phoenix, By Brock J. Heathcotte, Daniel P. Schaack, Stinson Leonard Street, LLP, Phoenix, By Michael L. Parrish, Brandon R. Nagy, Co–Counsel for Defendants/Appellees

Presiding Judge Kent E. Cattani delivered the opinion of the Court, in which Judge Lawrence F. Winthrop and Judge Peter B. Swann joined.

## OPINION

CATTANI, Judge:

¶ 1 Residents of Yarnell and surrounding areas (the "Residents") appeal from the superior court's ruling dismissing their negligence claims against the State of Arizona and the Arizona State Forestry Division (collectively, "State") arising from damage caused by the Yarnell Hill Fire. Because the superior court correctly concluded that the State did not owe a duty to protect the Residents' property against naturally caused wildfires, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶ 2 On the afternoon of June 30, 2013, the Yarnell Hill Fire burned out of control, killing 19 local firefighters and destroying structures and property throughout Yarnell. Lightning had sparked the wildfire two days earlier in mountainous wildlands near Yarnell, and the State, acting through the Forestry Division, was in charge of the firefighting efforts for the first three days, including when it hit Yarnell. This case arises only from the property damage caused by the fire; the tragic loss of life is not at issue here.

¶ 3 The Residents asserted civil claims against the State, alleging that the State had negligently managed the firefighting efforts, negligently failed to protect Yarnell from the fire, and negligently failed to provide a timely evacuation notice, all leading to the destruction of their property.[1] On the State's motion, the superior court dismissed the complaints on the basis that the State did not owe the Residents a duty as required to state a cause of action for negligence. The Residents appealed, and we now affirm.[2]

¶ 4 We hold that the State did not owe the Residents a legal duty in connection with its efforts to combat a wildland fire resulting from a natural occurrence on public land in natural condition. To hold otherwise

---

1. This case involves two related complaints. The first complaint named as plaintiffs 162 individuals and entities from the Yarnell area who sustained property damage in the fire. Two of these plaintiffs later filed a class action complaint asserting essentially the same claims on behalf of all residents of Yarnell and surrounding areas who suffered damage in the fire. We use the term "Residents" to refer to all plaintiffs in both cases, except where otherwise specified.

2. The State also moved to dismiss the claims against the Forestry Division on the basis that it is a non-jural entity and moved to dismiss the Overmyer class action complaint as duplicative of the Acri complaint. Because we affirm dismissal based on lack of duty, we need not address these alternative bases for partial dismissal.

would effectively require the State to act as an insurer against naturally-occurring calamities affecting private property throughout the state. And imposing such a duty (with its corresponding potential for liability) based on the State's undertaking to coordinate wildland firefighting would create a self-defeating incentive not to engage in such important efforts. Thus, the Residents' claims fail as a matter of law.

## DISCUSSION

¶ 5 Dismissal under Arizona Rule of Civil Procedure 12(b)(6) for failure to state a claim is proper "only if 'as a matter of law [ ] plaintiffs would not be entitled to relief under any interpretation of the facts susceptible of proof.'" *Coleman v. City of Mesa*, 230 Ariz. 352, 356, ¶ 8, 284 P.3d 863 (2012) (citation omitted and alteration in original). We consider only the pleading itself, and we "assume the truth of all well-pleaded factual allegations and indulge all reasonable inferences from those facts, but mere conclusory statements are insufficient." *Id.* at ¶ 9. We review de novo the superior court's dismissal for failure to state a claim on which relief can be granted. *Id.* at 355, ¶ 7, 284 P.3d 863.

¶ 6 A negligence claim requires proof of four elements: "(1) a duty requiring the defendant to conform to a certain standard of care," (2) breach of that standard of care, (3) causation, and (4) actual damages. *Gipson v. Kasey*, 214 Ariz. 141, 143, ¶ 9, 150 P.3d 228 (2007). The existence of a duty is a threshold question; "absent some duty, an action for negligence cannot be maintained." *Id.* at ¶ 11. This threshold question of whether a duty exists is a question of law for the court, which we consider de novo. *Guerra v. State*, 237 Ariz. 183, 185, ¶ 7, 348 P.3d 423 (2015).

¶ 7 A duty is an "obligation, recognized by law, which requires the defendant to conform to a particular standard of conduct in order to protect others against unreasonable risks of harm." *Markowitz v. Arizona Parks Bd.*, 146 Ariz. 352, 354, 706 P.2d 364 (1985). A duty may arise from a variety of sources, including a special relationship between the parties—whether contractual, fa-

milial, or based on "conduct undertaken by the defendant"—or as an expression of public policy. *Gipson*, 214 Ariz. at 145, ¶¶ 18, 22–23, 150 P.3d 228.

## I. Public Policy.

¶ 8 The Residents argue that "sound public policy imposed a duty of care on the State to protect Yarnell and its people." We recognize that public policy considerations may support recognition of a duty. *Id.* at ¶ 23. But public policy may also militate against recognition of a tort duty, *Guerra*, 237 Ariz. at 187, ¶ 20, 348 P.3d 423, and it does so here.

¶ 9 The duty the Residents seek to impose—protecting private property against a natural occurrence on public land maintained in natural condition—is unworkably broad. And the limitation the Residents propose— that the State only assumed a duty by in fact attempting to suppress the fire—would lead to perverse incentives. *See Gipson*, 214 Ariz. at 146, ¶ 29, 150 P.3d 228 (noting that "no-duty" rules are generally based on concerns that imposing liability would have adverse effects). The parties agree that prevention or suppression of wildfires—like the emergency response to any natural disaster—is a fundamental public safety obligation, and that public policy should encourage a prompt and efficacious response from the State. But imposing a tort duty based on the State's undertaking to provide an emergency response could instead encourage inaction: the State could shield itself from liability by simply doing nothing. Such a result is contrary to the overriding needs of the public.

¶ 10 Moreover, the duty advanced by the Residents would prioritize nearby private property interests at the expense of consideration of broader state interests. And here, the governing statute expressly guides the state forester's discretion to provide wildfire suppression services, absent a governing cooperative agreement, by reference to "the best interests of this *state*" and whether such services "are immediately necessary to protect *state* lands." Ariz. Rev. Stat. ("A.R.S.") § 37–1303(A) (formerly A.R.S. § 37–623(A))

(emphasis added);[3] *see also Monroe v. Basis Sch., Inc.*, 234 Ariz. 155, 160, ¶ 17, 318 P.3d 871 (App. 2014) (noting that a public-policy-based duty of care is generally grounded in statute or the common law, and "[i]n many instances, the legislature reflects public policy by codifying certain duties and obligations"). Imposing a duty of care beyond the legislative directive would impermissibly replace the State's discretion to consider the complex mix of risks and considerations presented by a wildfire with a mandate to prioritize the interests of individuals whose property might immediately be threatened.

¶ 11 The Residents urge us to adopt the Alaska Supreme Court's now-abrogated holding that "when the State or a subdivision of the State chooses to conduct firefighting operations, it owes a duty of care to those whose lives and property are threatened by the fire to conduct those operations non-negligently." *Angnabooguk v. State*, 26 P.3d 447, 452 (Alaska 2001). The Alaska legislature, however, thereafter adopted legislation overriding the *Angnabooguk* holding except as to "intentional misconduct within the course and scope of employment or agency and with complete disregard for the safety and property of others." *Brewer v. State*, 341 P.3d 1107, 1119 (Alaska 2014) (quoting Alaska Stat. Ann. 41.15.045(a)). And the Alaska legislature's statements in doing so are apropos: "[d]ecisions regarding forest management related to fire control and suppression should be prompted by sound forestry and firefighting principles, rather than concerns regarding possible tort liability." *Id.* (alteration in original) (quoting the transmittal letter and sponsor statement for H.B. 245, 23rd Leg., 1st Sess. (Alaska 2003), as found in 2003 House Journal 782–83).

¶ 12 This is not to suggest that the state forester should ignore the fire's potential im-

pact on nearby properties and communities as part of the statutorily-directed assessment of what wildfire suppression services are in the best interests of the state. *See* A.R.S. § 37–1303(A). Certainly there was a hoped-for benefit to the Residents here as the result of the State's work to contain the fire. But a hoped-for benefit that may arise incidental to broader public-safety concerns and the best interests of the state does not establish a duty. *See Vasquez v. State*, 220 Ariz. 304, 315, ¶ 35, 206 P.3d 753 (App. 2008) (holding that, because primary purpose of identifying human remains was public safety, incidental benefit to family and friends did not establish a duty to identify); *Morton v. Maricopa County*, 177 Ariz. 147, 151, 865 P.2d 808 (App. 1993) (same).

## II. Possessor of Land.

¶ 13 Our conclusion that public policy supports a no-duty rule for the State's control of a natural occurrence on public land maintained in natural condition is consistent with Arizona law regarding the parallel issue of duties owed by a possessor of land. The Residents assert that, as the owner or occupier of the land on which the fire started, the State owed a common law duty to prevent the fire's spread. But the Residents cite no Arizona authority, and we have found none, recognizing an owner/occupier's duty to prevent the spread of a wildfire regardless of the cause of the fire or the natural (as opposed to developed or artificial) condition of the land.

¶ 14 Instead, Arizona has adopted the Restatement (Second) of Torts ("Restatement") § 363 (1965), which provides that a possessor of land is not liable "for physical harm caused to others outside of the land by a natural condition of the land." *See Beals v.*

---

3. As relevant here, A.R.S. § 37–1303 provides that:

A. The state forester shall have authority to prevent and suppress any wildfires on state and private lands located outside incorporated municipalities and, if subject to cooperative agreements, on other lands located in this state or in other states, Mexico or Canada. If there is no cooperative agreement, the state forester may furnish wildfire suppression services on any lands in this state if the state forester

determines that suppression services are in the best interests of this state and are immediately necessary to protect state lands.

. . .

C. The state forester shall have responsibility to prevent and suppress wildfires only on lands covered by cooperative fire agreements.

The Residents have not alleged that the fire suppression effort around Yarnell was governed by a cooperative agreement.

*State*, 150 Ariz. 27, 30–31, 721 P.2d 1154 (App. 1986) (applying Restatement § 363 to affirm summary judgment for the State on the basis of no liability for damage to neighboring landowners caused by water diverted from public lands due to natural growth of salt cedars); *compare* Restatement § 364 (1965) (stating that, with some limitations, a possessor of land is liable for physical harm outside of the land caused by an *artificial* condition created by human action). "Natural condition" is broadly defined "to indicate that the condition of land has not been changed by any act of a human being." Restatement § 363 cmt. b. Although the cause of the Yarnell Hill Fire—a lightning strike—perhaps does not constitute a "condition" of the land, the state trust land apparently remained in natural condition, and the lightning was not an "act of a human being."

¶ 15 The distinction between natural and artificial conditions and between natural and human causes is consistent with the early English cases cited by the Residents and with a substantial group of the American authorities as well. The English cases, *Beaulieu v. Finglam*, Y.B. 2 Hen. IV, fol. 18, pl. 5 (1401) and *Turberville v. Stampe*, 1 Ld. Raym. 264, 91 Eng. Rep. 1072 (1697), both involved liability for the spread of a fire *set by the defendant* in his house or on his land, respectively. *See also St. Louis & S.F.R. Co. v. Mathews*, 165 U.S. 1, 6, 17 S.Ct. 243, 41 L.Ed. 611 (1897). Cases from other American jurisdictions would impose a duty for harm to a neighbor resulting from the defendant's *use* of an intentionally set fire, *see, e.g.*, *McNally v. Colwell*, 91 Mich. 527, 52 N.W. 70 (1892); *Koos v. Roth*, 293 Or. 670, 652 P.2d 1255, 1263–65 (1982), or even if the fire was caused by another, *see, e.g.*, *Arnhold v. United States*, 284 F.2d 326, 328–29 (9th Cir. 1960) (holding the United States liable for damage caused by a fire started by a railroad using a right of way through U.S. land, for which the government had entered into a cooperative agreement to "take 'immediate vigorous action' to control all fires breaking out" in the area). Because the Yarnell Hill Fire arose from a natural cause on land that remained unused and in natural condition, these authorities do not support imposition of a duty in this case.

¶ 16 As the Residents note, other American jurisdictions recognize a land possessor's duty to control the spread of a fire without regard to its cause. *See, e.g.*, *Farrell v. Minneapolis & R. R. Ry. Co.*, 121 Minn. 357, 141 N.W. 491, 492 (1913) (recognizing a land owner's duty to prevent the spread of a known fire started on the owner's land even if "from any cause for which the landowner is not responsible"); *Sandberg v. Cavanaugh Timber Co.*, 95 Wash. 556, 164 P. 200, 202 (1917) (recognizing a land owner's duty to "use reasonable effort to prevent the spread of a fire occurring upon his premises, apart from his own act or neglect attending the starting of the fire"). But this concept of duty would contravene the distinction between liability for natural as opposed to artificial conditions recognized under Arizona law applying the Restatement. *See* Restatement §§ 363–64. And in the case of state trust lands, it would, as described above, undermine the public policy evidenced by the discretion vested in the state forester under A.R.S. § 37–1303(A). Accordingly, we decline to recognize a common law duty to protect the Residents by preventing the spread of a naturally caused fire started on State land maintained in natural condition.

### III. Voluntary Undertaking.

¶ 17 The Residents argue that the State assumed a duty of care by undertaking to protect Yarnell from the fire and to provide an evacuation notice if necessary. A defendant may assume a duty of care by undertaking (with or without a formal relationship) to perform services for the plaintiff. *See Gipson*, 214 Ariz. at 145, ¶ 18, 150 P.3d 228; *Stanley v. McCarver*, 208 Ariz. 219, 221, 223–24, ¶¶ 7, 15, 92 P.3d 849 (2004). Arizona follows Restatement § 323 in addressing this theory of duty:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
>
> (a) his failure to exercise such care increases the risk of such harm, or

(b) the harm is suffered because of the other's reliance upon the undertaking.

*See Stanley*, 208 Ariz. at 223–24, ¶ 15, 92 P.3d 849; *Barnum v. Rural Fire Protection Co.*, 24 Ariz.App. 233, 237, 537 P.2d 618 (App. 1975).

¶ 18 By its terms, Restatement § 323 applies to an undertaking "to render services to another." And here, the Residents' factual allegations do not show an undertaking to provide fire protection services directed *to the Residents*. The factual allegations include that the State acted to "contain" the Yarnell Hill Fire, providing "some point protection" around the Yarnell area as well as structure protection group orders for some clearing for a potential burnout and firebreak "on the outskirts of the Yarnell area" and some aerial retardant drops. But these actions are consistent with the state forester's discretionary authority to provide wildfire suppression services in the interest of the state and in the interest of protecting state lands as directed by A.R.S. § 37–1303(A), rather than an undertaking directed to the benefit and protection of the Residents' property. Although we need not foreclose the possibility that the State *could* assume such a duty by an affirmative undertaking, the actions alleged are consistent with the public-policy-based no-duty rule described above.

¶ 19 The Residents' allegation that the State undertook to provide an evacuation notice is also unavailing. The only allegation arguably supporting an undertaking to provide an evacuation notice is the assertion that the State "placed," "requested," or "radioed" for evacuation of Yarnell. But the Residents' allegation was that the State waited too long to do so; that is, that the State waited too long to assume this duty. Because the alleged breach of duty necessarily occurred before the State was bound by any assumed duty, the Residents' claim based on an undertaking to provide an evacuation notice fails.

## IV. Abnormally Dangerous Activity.

¶ 20 Finally, the Residents argue that the State should be held liable for their losses because fighting wildfires is an abnormally dangerous activity. Arizona recognizes strict liability for harm resulting from an abnormally dangerous activity. Restatement §§ 519, 520 (1977) (adopted in Arizona by *Correa v. Curbey*, 124 Ariz. 480, 481, 605 P.2d 458 (App. 1979)). Strict liability extends only to "the kind of harm, the possibility of which makes the activity abnormally dangerous." Restatement § 519(2); *see also id.* at cmt. e (strict liability "applies only to harm that is within the scope of the abnormal risk that is the basis of the liability").

¶ 21 We need not decide whether fighting wildfires is an abnormally dangerous activity, however, because the damages alleged resulted from the uncontrolled fire itself, not from the firefighting. The Residents' complaints do not allege that the State's firefighting efforts created the risk, but rather that the State failed to protect them from the risk posed by the existing fire. Even if the State's approach to the firefighting efforts delayed measures that could have mitigated the damage to private property, no affirmative acts by the State are alleged to have caused the damage. Accordingly, the abnormally dangerous activity doctrine does not apply.

## V. Duty Based on Precluding Local Firefighter Action.

¶ 22 The Residents allege that "[i]n the exercise of its practical and legal authority, the Arizona State Forestry Division ordered some of the local firefighting assets not to do anything to combat the Yarnell Hill Fire without its specific authorization, permission, and direction." This allegation arguably supports an inference, *see Coleman*, 230 Ariz. at 356, ¶ 9, 284 P.3d 863, that the State's assumption of control prevented the Residents and local firefighters from performing activities on non-state lands that might have reduced the Residents' damages. But a directive not to do anything to "combat the Yarnell Hill Fire" is not the same as a directive not to use local efforts to protect property within Yarnell.

## CONCLUSION

¶ 23 We affirm the dismissal of the Residents' complaints.