IN THE

# Arizona Court of Appeals
## Division One

CHERYL LYNN STAIR, et al., *Plaintiffs/Appellants*,

*v.*

MARICOPA COUNTY, et al., *Defendants/Appellees*.

No. 1 CA-CV 15-0758
FILED 9-4-2018

Appeal from the Superior Court in Maricopa County
No.  CV2014-004744
The Honorable J. Richard Gama, Judge, *Retired*

**AFFIRMED**

COUNSEL

Grant Woods Law, Phoenix
By J. Grant Woods
*Co-Counsel for Plaintiffs/Appellants*

Michael Riikola, Esq, Phoenix
By Michael E. Riikola
*Co-Counsel for Plaintiffs/Appellants*

Sacks Tierney, PA, Scottsdale
By Jeffrey S. Leonard, Sharon B. Shively, James W. Armstrong
*Counsel for Defendant/Appellee Maricopa County*

Wieneke Law Group, PLC, Tempe
By Kathleen L. Wieneke, Christina Retts
*Co-Counsel for Defendant/Appellee City of Phoenix*

Struck, Love, Bojanowski & Acedo, PLC, Chandler
By Nicholas D. Acedo
*Co-Counsel for Defendant/Appellee City of Phoenix*

Ryan, Rapp & Underwood, PLC, Phoenix
By Christopher T. Rapp, Ian A. Macpherson
*Counsel for Defendant/Appellee Mukavetz*

---

**OPINION**

Presiding Judge Diane M. Johnsen delivered the opinion of the Court, in which Judge James P. Beene and Judge Randall M. Howe joined.

---

**J O H N S E N**, Judge:

**¶1**        Cheryl Lynn Stair is the widow of Steven Stair, who was murdered by a member of a criminal street gang awaiting trial on several felony charges.  Stair sued various government entities and one government employee, alleging their negligence and gross negligence caused or failed to prevent her husband's death.  The superior court granted the defendants' motions to dismiss, rejecting Stair's arguments that the defendants owed duties created by public policy found in statutes, codes of ethics or the common law.  Concluding that none of the defendants owed a duty that might give rise to liability, we affirm.

**FACTS AND PROCEDURAL BACKGROUND**

**¶2**        One of the defendants Stair sued is Jessica Mukavetz, a mitigation specialist who worked for the Maricopa County Office of the Legal Defender ("OLD").  OLD represented Rene Durgin, a member of the Mexican Mafia criminal street gang charged with capital murder.  Mukavetz was assigned to assist in Durgin's case, and the two became

romantically involved during her many visits with him in jail. From January 2012 through January 2013, Mukavetz visited Durgin in jail 75 times. Recorded telephone calls, text messages, social media posts and witness accounts identified Mukavetz as Durgin's "wife," and Durgin considered himself her husband even though she was married to someone else. Mukavetz hoped to become pregnant with Durgin's child, and to that end, Durgin passed semen concealed in a pen to her during her jail visits.

¶3 Bobby Hoover, another member of the Mexican Mafia, also was in jail, charged with auto theft, armed robbery and home invasion. In October 2012, at Durgin's direction, Mukavetz paid Hoover's $5,000 bail, and he was released wearing an electronic ankle monitor.

¶4 Stair's complaint alleged that, having gained Hoover's release, Mukavetz proceeded to help him and Durgin carry out the business of the Mexican Mafia. According to the complaint, Mukavetz had a copy of a Mexican Mafia "hit list" on her cell phone and directly involved herself in "extortion and threats of violent crime to be undertaken by Durgin and Hoover." Phone records showed a "substantial" amount of communication between her and Hoover.

¶5 Meanwhile, the Maricopa County Sheriff's Office and the Phoenix Police Department had created a joint task force aimed at combatting criminal street gangs, including the Mexican Mafia. According to the complaint, the task force knew of the Durgin-Mukavetz relationship. The complaint alleged the task force had obtained "recorded jail calls, interviews, electronic records, including [social media], text messaging, inmate account records, and inmate jail visitation records" showing Mukavetz was using her role as a mitigation specialist to pass information and jail contraband for Mexican Mafia members.

¶6 According to the complaint, the task force knew the Mexican Mafia commonly employed "compromised females" to move information and contraband in and out of jails, knew Mukavetz and Durgin were romantically involved, knew Mukavetz was providing financial support to the Mexican Mafia, knew Mukavetz had bailed Hoover out of jail at Durgin's direction, and knew she was directly involved "with extortion and threats of violent crime" Durgin and Hoover planned to commit. The complaint specifically alleged Phoenix police knew that Hoover's release from jail "posed a threat of murder or substantial bodily harm."

¶7 Indeed, having been released from jail, Hoover proceeded to illegally acquire a sawed-off shotgun. According to the complaint, Mesa

police learned on January 17, 2013, that Hoover had acquired the gun and forwarded that information to the Maricopa County Sheriff's Office. The complaint also alleged that Mukavetz was present during a telephone call between Durgin and Hoover on January 19 and heard Hoover rack the slide of a gun. Mukavetz also was present during a phone call ten days later in which Durgin and Hoover "extensively discussed preparations for a 'hit' on the streets" that Durgin had ordered Hoover to carry out.

¶8 On February 4, as Mukavetz watched, Hoover removed his electronic ankle monitor. According to the complaint, Phoenix police learned that same day that Hoover had slipped out of his monitor and found out a day later that Mukavetz had been present when he did so. Mukavetz failed to notify authorities that Hoover had acquired a gun, had removed his ankle monitor or had talked to Durgin about a planned "hit." And, despite knowing that Hoover had acquired a gun and removed his monitor, the anti-gang task force did not move immediately to arrest him.

¶9 The criminal activities alleged in the complaint did not touch the Stair family until February 11, 2013. Stair and her husband managed several apartment properties in the Phoenix area. A week after Hoover removed his ankle monitor, Stair noticed a light in an unoccupied apartment unit and asked her husband to check on it. Mr. Stair knocked on the door of the unit, surprising Hoover, who was hiding inside. Hoover shot Mr. Stair four times, killing him instantly.

¶10 On behalf of herself and her family, Stair sued Mukavetz, Maricopa County and the City of Phoenix, alleging their negligence and gross negligence caused or failed to prevent Mr. Stair's death. The defendants moved to dismiss, arguing, *inter alia*, that they owed no duty to Mr. Stair. Stair moved for leave to file a third amended complaint. The superior court granted the motions to dismiss, then denied the motion to file another complaint. Stair timely appealed. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution and Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1) (2018) and -2101(A)(1) (2018).[1]

---

[1] Absent material revision after the relevant date, we cite a statute's or rule's current version.

## DISCUSSION

### A.  Legal Principles.

**¶11**        We review *de novo* the dismissal of a complaint for failure to state a claim and will affirm only if the plaintiff "would not be entitled to relief under any interpretation of the facts susceptible of proof." *Coleman v. City of Mesa*, 230 Ariz. 352, 356, ¶ 8 (2012) (quotation omitted); *see* Ariz. R. Civ. P. 12(b)(6).  In determining whether a complaint states a claim upon which relief can be granted, we "assume the truth of the well-pled factual allegations and indulge all reasonable inferences therefrom." *Cullen v. Auto-Owners Ins. Co.*, 218 Ariz. 417, 419, ¶ 7 (2008).

**¶12**        "To establish a claim for negligence, a plaintiff must prove four elements: (1) a duty requiring the defendant to conform to a certain standard of care; (2) a breach by the defendant of that standard; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual damages." *Gipson v. Kasey*, 214 Ariz. 141, 143, ¶ 9 (2007).  Whether a duty exists is a matter of law for the court to decide. *Acri v. State*, 242 Ariz. 235, 238, ¶ 6 (App. 2017).  "Duty is defined as an obligation, recognized by law, which requires the defendant to conform to a particular standard of conduct in order to protect others against unreasonable risks of harm." *Gipson*, 214 Ariz. at 143, ¶ 10 (quotation omitted).  Such an obligation may arise from "either recognized common law special relationships or relationships created by public policy." *Quiroz v. Alcoa Inc.*, 243 Ariz. 560, 565, ¶ 14 (2018).  Gross negligence, like negligence, requires proof of a duty. *See Hogue v. City of Phoenix*, 240 Ariz. 277, 280, ¶ 11 (App. 2016).

### B.  Mukavetz Did Not Owe Mr. Stair a Duty.

#### 1.  Statutes as a source of duty.

**¶13**        Stair argues Arizona statutes criminalizing gang activity imposed a duty on Mukavetz for the protection of Stair's husband.  "A statute reflecting public policy may create a duty when a plaintiff 'is within the class of persons to be protected by the statute and the harm that occurred . . . is the risk that the statute sought to protect against.'" *Quiroz*, 243 Ariz. at 565, ¶ 15 (quoting *Gipson*, 214 Ariz. at 146, ¶ 26); *see* W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 36, at 229-30 (5th ed. 1984).

**¶14**        Stair contends several Arizona criminal-gang statutes reflect a public policy that created a duty that supports her negligence and gross negligence claims against Mukavetz.  *E.g.*, A.R.S. §§ 13-714 (2018)

(enhanced punishment for felonies committed to promote or assist criminal street gangs); -1202(B)(2) (2018) (enhanced threatening or intimidating by gang members); -2321 (2018) (participation in criminal street gang). She likewise cites case authorities applying and enforcing the gang statutes against criminal defendants. *See State v. Montano*, 204 Ariz. 413, 425-26, ¶¶ 59-63 (2003) (allowing testimony regarding defendant's Mexican Mafia membership); *State v. Lujan*, 136 Ariz. 326, 328 (1983) (prosecutor's mention of Mexican Mafia was not unfairly prejudicial); *State v. Chairez*, 235 Ariz. 99, 100-01, ¶¶ 9-11 (App. 2013) (denying post-conviction relief in part because sufficient evidence showed defendant violated A.R.S. § 13-2321 in furthering Mexican Mafia objectives); *State v. Williams*, 141 Ariz. 127, 129 (App. 1984) (murder victim's alleged membership in Mexican Mafia subject of motion *in limine*).

¶15 But Stair does not allege Mukavetz violated any criminal statute other than the one to which she pled guilty, § 13-2321(A)(4). And she cites no authority for the proposition that a duty may arise from public policy found in a criminal statute other than one the defendant is alleged to have violated. Arizona's many criminal statutes outlawing or penalizing criminal street gang activities are plain evidence of a public policy against criminal street gangs. But the public policy reflected in those statutes does not create a duty enforceable in tort against one who did not violate any of those statutes. That is the nature of the legal principle that allows a court to find a duty in a statute: By enacting a statute that requires or forbids certain conduct, the legislature articulates a public policy that may impose a duty enforceable in tort against one who violates the statute. Under this principle, the statute the defendant allegedly violated establishes the scope of the duty.

¶16 The gang statute to which Mukavetz pled guilty is § 13-2321(A)(4), which provides that one "commits participating in a criminal street gang by . . . [i]ntentionally promoting or furthering the criminal objectives of a criminal street gang by inducing or committing any act or omission by a public servant in violation of the public servant's official duty." If that statute imposed a tort duty on Mukavetz, it was to refrain from committing an act or omission that would "promot[e] or further[] the criminal objectives of a criminal street gang."

¶17 Stair alleges that, in violation of the statute, Mukavetz breached her position of public trust by passing information and contraband to and from Durgin and by failing to report what she knew about the crimes Durgin and Hoover planned to commit. Stair does not allege, however, that the shooting of her husband was among the "criminal

objectives" of the Mexican Mafia that Mukavetz admittedly promoted or furthered, and it is undisputed on appeal that his death instead was a tragic random act of violence. A criminal statute may establish a duty in tort to a particular plaintiff only when the statute is "designed to protect the class of persons, in which the plaintiff is included, *against the risk of the type of harm which has in fact occurred as a result of its violation*." *Gipson*, 214 Ariz. at 146, ¶ 25 (emphasis added) (quoting *Estate of Hernandez v. Ariz. Bd. of Regents*, 177 Ariz. 244, 253 (1994)); *see* Restatement (Second) of Torts ("Second Restatement") § 288(g) (1965) ("The court will not adopt as the standard of conduct . . . the requirements of a legislative enactment . . . whose purpose is found to be exclusively . . . to protect against any other hazards than that from which the harm has resulted.").

¶18        Stair contends that Mukavetz had to know that Hoover, armed and unmonitored on the street, presented an "immense danger to others of serious physical harm . . . because that was the very purpose of Durgin's orders to Hoover." She likewise argues Mukavetz "exploited the sanctity of the attorney-client privilege to stage . . . the release of [a Mexican Mafia] hitman from jail so he could enforce violent [Mexican Mafia] discipline." But Stair does not allege Durgin ordered Hoover to murder her husband or that the "hit list" that Durgin created included her husband or even a category of persons that included her husband. Nor does she allege that Hoover's cold-blooded murder of her husband was part of any direction or effort to "enforce violent [Mexican Mafia] discipline." As *Quiroz* and *Gipson* have made clear, the issue is not whether a violent act was a foreseeable result of Hoover's release and acquisition of a gun or a foreseeable result of Mukavetz's own violation of § 13-2321. *Quiroz*, 243 Ariz. at 565-66, ¶¶ 11-13; *Gipson*, 214 Ariz. at 144, ¶¶ 15-17. Instead, the issue is whether the statute Mukavetz violated was enacted to protect a class of persons that included Mr. Stair against the type of harm inflicted on him. *Quiroz*, 243 Ariz. at 565, ¶ 15; *Gipson*, 214 Ariz. at 146, ¶ 25.

¶19        Stair does not allege that her husband's murder was within the "criminal objectives" of the Mexican Mafia that Mukavetz pled guilty to promoting or furthering. *See* A.R.S. § 13-2321(A)(4). Mr. Stair was not a bystander victim of a gang-related drive-by shooting or a gang's armed robbery of a drug dealer. Although Hoover, the murderer, was a member of a gang, there is no allegation that he killed Mr. Stair in furtherance of the gang's objectives. Nor does Stair allege that Hoover's presence in the Stairs' apartment was related to his gang activity. Mr. Stair died only because he had a happenstance encounter with Hoover in the apartment in which Hoover had taken shelter after slipping out of his ankle monitor. Because Stair did not allege that her husband's death was among or related to the

"criminal objectives of the Mexican Mafia" that Mukavetz confessed to promoting or furthering, Stair did not state a claim against Mukavetz for breach of a duty arising under § 13-2321(A)(4).

## 2. Professional codes of conduct as a source of duty.

¶20 Stair also argues that Mukavetz owed a duty based on public policy found in codes of ethics issued by the National Alliance of Sentencing Advocates and Mitigation Specialists, the American Bar Association's Supplementary Guidelines for the Mitigation Function of Defense Teams in Death Penalty Cases, and the Arizona State Bar Association's Rules of Professional Conduct. "[I]n the absence of a statute, we exercise great restraint in declaring public policy." *Quiroz*, 243 Ariz. at 566, ¶ 19.

¶21 Under the code of ethics of the National Alliance of Sentencing Advocates and Mitigation Specialists, a mitigation specialist has an ethical responsibility to his or her clients and to the legal profession. Stair cites no authority showing Arizona has adopted the code of ethics as public policy. In any event, the code does not impose a duty on a mitigation specialist in favor of a third party who might be harmed by the mitigation specialist's client, let alone by an associate of a client. *See Sullivan v. Pulte Home Corp.*, 237 Ariz. 547, 551, ¶ 13 (App. 2015) ("Professional codes frequently establish standards for licensees that do not give rise to private causes of action.").

¶22 The same is true with respect to the American Bar Association's Supplementary Guidelines for the Mitigation Function of Defense Teams, which were established to "ensure high quality representation for all persons facing the possible imposition or execution of a death sentence in any jurisdiction." *Supplementary Guidelines for the Mitigation Function of Defense Teams in Death Penalty Cases*, 36 Hofstra L. Rev. 677, 679 (2008). Notably, the guidelines outline responsibilities owed to the client, but do not reference responsibilities owed to third parties. *Id.*

¶23 Stair also argues that, as a mitigation specialist, Mukavetz was bound by the Arizona State Bar Association's Rules of Professional Conduct. Although lawyers may have an obligation under the rules to ensure that a nonlawyer assistant complies with the professional obligations of the lawyer, Arizona Rule of the Supreme Court 42, Rules of Professional Conduct ("ER") 5.3(b), the rules do not directly apply to nonlawyers, *see* ER 5.3 cmt. 2 ("The measures employed in supervising

nonlawyers should take account of the fact that they do not have legal training and are not subject to professional discipline.").

### 3.    The Restatement as a source of duty.

¶24    Public policy giving rise to a duty of care also may be "based on the common law – specifically, case law and Restatement sections consistent with Arizona law." *Quiroz*, 243 Ariz. at 567, ¶ 20.  Stair argues Mukavetz owed a duty of care to Mr. Stair under Restatement (Third) of Torts: Liability for Physical and Emotional Harm ("Third Restatement") § 7(a) (2016), which states, "An actor ordinarily has a duty to exercise reasonable care when the actor's conduct creates a risk of physical harm." At the parties' request, we stayed this appeal pending the Arizona Supreme Court's opinion in *Quiroz* and received additional briefing after the court decided that case.  *Quiroz* plainly rejects the approach to duty represented by § 7 of the Third Restatement.  *Quiroz*, 243 Ariz. at 572-73, ¶¶ 51-61.  Now that our supreme court has spoken, there is little more to be said about § 7 of the Third Restatement as a source of duty in Arizona.

¶25    Stair also contends that Mukavetz owed her husband a duty pursuant to Third Restatement § 41.  Under that provision, "[a]n actor in a special relationship with another owes a duty of reasonable care to third parties with regard to risks posed by the other that arise within the scope of the relationship."   As a general proposition, Third Restatement § 41 imposes a duty consistent with longstanding Arizona law.  *See Grimm v. Ariz. Bd. of Pardons & Paroles*, 115 Ariz. 260, 267-68 (1977); *Barkhurst v. Kingsmen of Route 66, Inc.*, 234 Ariz. 470, 472-73, ¶ 10 (App. 2014); Second Restatement §§ 315, 316, 317, 319.  These authorities address duties that may be owed in connection with defined special relationships, such as parent-child and employer-employee.  Stair alleged no facts sufficient to create a special relationship of any sort between Mukavetz and Hoover that might implicate this principle.

¶26    Citing *Sage v. Blagg Appraisal Co.*, 221 Ariz. 33, 38, ¶ 20 (App. 2009), Stair argues that the "'realities' of modern practices, and emerging guidelines" bear on whether public policy should require imposition of a duty under these circumstances.  In *Sage*, we held an appraiser hired by a lender in connection with a loan to a prospective home buyer owed a duty of care to the buyer/borrower under Second Restatement § 552.  221 Ariz. at 34-35, 40 ¶¶ 2-3, 7-8, 26.  Section 552 states that one who furnishes "false information for the guidance of others in their business transactions" may be liable for pecuniary injury suffered by "one of a limited group of persons . . . [to whom] he . . . knows that the recipient intends to supply" the

information. Noting that the prospective buyer had paid for the appraisal and that the appraiser knew the lender sought the appraisal in connection with a loan to the buyer, we held that "a duty of care is found in public policy evidenced by [Second] Restatement § 552, the realities of the loan/purchase transaction by which one typically acquires a home, and emerging industry guidelines recognizing that the buyer/borrower normally relies on the appraiser in the situation we address." *Id.* at 38, ¶ 20. By contrast, Stair has not alleged any such facts to support an extension of any duty that Mukavetz owed to her client, Durgin, for the benefit of Mr. Stair.

¶27 Stair also contends that Mukavetz owed her husband a duty under Third Restatement § 20, under which one may be strictly liable for harm resulting from "an abnormally dangerous activity." *See also* Second Restatement §§ 519-20. "The law of abnormally dangerous activities traditionally contemplates a hazardous activity occurring in a specific place which causes harm to others in some geographic proximity." *Gaston v. Hunter*, 121 Ariz. 33, 48 (App. 1978); *see Acri*, 242 Ariz. at 241, ¶¶ 20-21 (fighting wildfires); *Correa v. Curbey*, 124 Ariz. 480, 481-82 (App. 1979) (use or storage of explosives); Second Restatement § 520A (flying aircrafts). Stair offers no authority for the proposition that these provisions might apply here.

## C. OLD Did Not Owe Mr. Stair a Duty.

¶28 Stair alleged OLD committed gross negligence in failing to supervise Mukavetz. Stair argues OLD owed a duty to her husband arising out of "legal, ethical, and government standards and policies," including ER 1.6(b), 5.1(a)-(b), 5.3(a)-(b) and 8.4(a)-(d).[2] Stair alleged that her husband's

---

[2] ER 1.6(b) provides that, notwithstanding a lawyer's duty of confidentiality, "[a] lawyer shall reveal such information to the extent the lawyer reasonably believes necessary to prevent the client from committing a criminal act that the lawyer believes is likely to result in death or substantial bodily harm." ER 5.1, "Responsibilities of Partners, Managers, and Supervisory Lawyers," requires lawyers who have managerial authority over a law firm to "make reasonable efforts to ensure that the firm has in effect measures giving reasonable assurance" that its lawyers will "conform to" the Rules of Professional Conduct. ER 5.1(a). It also provides that a lawyer with "direct supervisory authority over another lawyer shall make reasonable efforts to ensure" that the lawyer "conforms to" the Rules of Professional Conduct. ER 5.1(b). ER 8.4 states that "professional

death could have been prevented if OLD had properly supervised Mukavetz.

¶29        ER 5.3 describes the obligations of lawyers, such as those at OLD, with respect to nonlawyers who work with them:

> With respect to a nonlawyer employed or retained by or associated with a lawyer:
>
> (a) a partner, and a lawyer who individually or together with other lawyers possesses comparable managerial authority in a law firm shall make reasonable efforts to ensure that the firm has in effect measures giving reasonable assurance that the person's conduct is compatible with the professional obligations of the lawyer;
>
> (b) a lawyer having direct supervisory authority over the nonlawyer shall make reasonable efforts to ensure that the person's conduct is compatible with the professional obligations of the lawyer.

¶30        Stair offers no authority for her contention that ER 5.3 or any other lawyer's ethical rule supports imposition of a duty of care owed by a law firm to a non-client.  Moreover, the supreme court's preamble to the Rules of Professional Conduct specifically instructs against imposition of a common-law duty based on the rules:

> Violation of a Rule should not itself give rise to a cause of action against a lawyer nor should it create any presumption in such a case that a legal duty has been breached . . . .  The Rules are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies.  They are not designed to be a basis for civil liability.

Ariz. Sup. Ct. R. 42, Preamble [20].  *See Sullivan*, 237 Ariz. at 550, ¶ 9 ("It would be anomalous . . . to premise a tort duty on a regulatory scheme that

---

misconduct" by a lawyer includes knowing violations of the Rules of Professional Conduct; criminal acts that "reflect[] adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer"; "conduct involving dishonesty, fraud, deceit or misrepresentation"; and "conduct that is prejudicial to the administration of justice."  ER 8.4(a)-(d).

expressly eschews any intent to protect or benefit a class or group of persons.").

## D.    Neither the City nor the County Owed Mr. Stair a Duty.

¶31         Stair also alleged the County (through the Sheriff's Office) and the City knew Durgin, Hoover and Mukavetz were committing crimes and were liable because they failed to arrest Hoover before he killed Mr. Stair. Stair argues that, under circumstances such as alleged here, law enforcement is obligated to "report information where a failure to do so unreasonably endangers the public."

¶32         In determining whether the task force members owed a duty to Mr. Stair in this case, we apply general principles. *See*, *e.g.*, *Guerra v. State*, 237 Ariz. 183, 185, ¶ 7 (2015) ("'[D]uty' is 'an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection.'") (quoting *Ontiveros v. Borak*, 136 Ariz. 500, 508 (1983) (quoting William L. Prosser, *Handbook of the Law of Torts* § 42, at 325-26 (4th ed. 1971))); *Gipson*, 214 Ariz. at 145-46, ¶¶ 18-26.   When government has "opted to provide police protection, [it] ha[s] a duty to act as would a reasonably careful and prudent police department in the same circumstances." *Austin v. City of Scottsdale*, 140 Ariz. 579, 581-82 (1984).

¶33         Stair argues *Austin* supports imposition of a duty when law enforcement actors know of danger but fail to prevent its consequences. In that case, our supreme court reversed a directed verdict against the estate of a man who was murdered two days after an anonymous caller had identified the victim by name to a 9-1-1 dispatcher, warned the victim's life "might be in danger," and told the dispatcher the victim was to be released the next day from the Arizona State Hospital and would be going from there to a townhouse on a specific Scottsdale street.   140 Ariz. at 580. Because the caller had identified the prospective victim by name and given the dispatcher other detailed information about the victim's location, the *Austin* court did not consider the scope-of-duty question presented here. The court nevertheless observed that law enforcement's duty to act reasonably "is not a duty to protect each citizen within the [city's] geographic boundaries from all harms."   140 Ariz. at 582, n.2.   The court continued, "By establishing a police department, a municipality becomes neither a general insurer of safety nor absolutely liable for all harms to its citizens." *Id.*

¶34         Stair cites no case imposing a duty to prevent a random act of violence such as that which happened here.   Nor does she allege that,

although law enforcement agencies knew generally that Hoover was dangerous, had acquired a gun and slipped his ankle monitor, either agency had any information that Hoover presented a threat to Mr. Stair. *See Hutcherson v. City of Phoenix*, 192 Ariz. 51, 52-53, 57, ¶¶ 1-10, 37 (1998) (9-1-1 caller reported that ex-boyfriend had threatened to assault her and was on his way to see her) *overruled in part on other grounds by State v. Fischer*, 242 Ariz. 44, 49-50, ¶¶ 16-18 (2017); *Austin*, 140 Ariz. at 579-83.

**E. Motion for Leave to Amend.**

**¶35** Stair finally argues the superior court erred by denying her motion for leave to file a third amended complaint. In that motion, Stair's attorney asserted he had been approached by Mukavetz's supervisor at OLD, who implied that she had personal knowledge that would support a claim against her or the County. The proposed third amended complaint alleged on information and belief that Mukavetz's supervisor and OLD had "actual knowledge about the negligent, reckless, and/or criminal propensity" of Mukavetz with respect to her activities regarding Durgin and Hoover. OLD and the County objected to the motion, and the County filed a declaration from the OLD supervisor denying she had contacted Stair's attorney. The superior court denied the motion for leave to amend, finding, *inter alia,* that amendment would be futile.

**¶36** The proposed amendment was aimed at satisfying A.R.S. § 12-820.05(B) (2018), which provides:

> A public entity is not liable for losses that arise out of and are directly attributable to an act or omission determined by a court to be a criminal felony by a public employee unless the public entity knew of the public employee's propensity for that action.

Citing the statute, Stair argues Mr. Stair's death was attributable to Mukavetz's criminal acts and that OLD knew Mukavetz might commit a crime because it knew of her involvement with Durgin.

**¶37** Under Arizona Rule of Civil Procedure 15(a), "[l]eave to amend must be freely given when justice requires." But an amendment need not be granted when it would be futile. *Tumacacori Mission Land Dev. Ltd. v. Union Pac. R. Co.*, 231 Ariz. 517, 520, ¶ 12 (App. 2013). The superior court correctly concluded that the proposed third amended complaint would have been futile. Section 12-820.05(B) does not establish a duty or authorize a cause of action; it merely carves out an exception to a broader rule of immunity. *See* A.R.S. § 12-820.05(A) (2018) (except as enumerated,

statutory immunity statutes "shall not be construed to affect, alter or otherwise modify any other rules of tort immunity").  Because none of the public-entity defendants owed a duty to Stair's husband, § 12-820.05(B) is irrelevant.  Accordingly, the court did not abuse its discretion by denying Stair leave to amend.  *See Tumacacori*, 231 Ariz. at 519-20, ¶¶ 4, 12.

## CONCLUSION

**¶38**        Because Stair has not alleged facts that give rise to a duty owed by any of the defendants to her late husband, we affirm the superior court's dismissal of her complaint.  We also affirm the denial of Stair's motion for leave to amend.



AMY M. WOOD • Clerk of the Court
FILED:  AA