NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

RICHARD LEWIS GANN, *Plaintiff/Appellant*,

*v.*

STATE OF ARIZONA et al., *Defendants/Appellees*.

No. 1 CA-CV 21-0675
FILED 9-29-2022

---

Appeal from the Superior Court in Maricopa County
No. CV2021-002745
The Honorable John R. Hannah, Jr., Judge

**AFFIRMED**

---

COUNSEL

Ahwatukee Legal Office, P.C., Phoenix
By David L. Abney
*Co-Counsel for Plaintiff/Appellant*

Breyer Law Office, P.C., Phoenix
By Mark P. Breyer, Rob Kleinschmidt, Edward M. Ladley
*Co-Counsel for Plaintiff/Appellant*

Arizona Attorney General's Office, Phoenix
By Deborah L. Garner, Stephanie Elliott, Daniel P. Schaack
*Counsel for Defendant/Appellee, State of Arizona*

_____

**MEMORANDUM DECISION**

Vice Chief Judge David B. Gass delivered the decision of the court, in which Presiding Judge Samuel A. Thumma and Judge Cynthia J. Bailey joined.

_____

**G A S S**, Vice Chief Judge:

¶1        Richard Lewis Gann appeals the superior court's dismissal of a negligence claim against the State for his son's death. We affirm.

**FACTUAL AND PROCEDURAL HISTORY**

¶2        Gann's son tragically died while riding in a 15-passenger school van returning from a high school field trip. The driver was not school-bus certified. On the return trip, the van veered into oncoming traffic, ran off the highway, and rolled over. Gann's son was ejected from the van and died at the scene.

¶3        Gann filed a negligence claim for wrongful death against seven named defendants. Gann alleged the following were liable under "*respondeat superior* and agency principles[:]" the State of Arizona; the organizing community college and its district; the hosting community college; and Gann's son's high school and its district. Gann also named the driver as a defendant. Gann claimed the accident would not have happened but for the other defendants' hiring the driver.

¶4        Gann's amended complaint named only the State as a defendant, relying on "*respondeat superior* and agency principles." Gann voluntarily dismissed with prejudice all other defendants. During oral argument before this court, Gann clarified he does not allege a common law theory of *respondeat superior*. Instead, he relies on a direct duty, based on either a statute, a special relationship, or a voluntary undertaking.

¶5        The State moved to dismiss for failure to state a claim upon which relief can be granted. *See* Ariz. R. Civ. P. 12(b)(6). After briefing and oral argument, the superior court granted the motion, finding Gann failed to allege the State owed a cognizable duty to his son. In granting the motion, the superior court also ruled the State's decision not to ban schools' use of 15-passenger vans was an administrative policy decision subject to absolute immunity from liability under A.R.S. § 12-820.01.A.

**¶6** Gann timely appealed. This court has jurisdiction under article VI, section 9, of the Arizona Constitution, and A.R.S. §§ 12-120.21.A.1 and 12-2101.A.1.

## DISCUSSION

**¶7** This court reviews *de novo* a Rule 12(b)(6) dismissal. *Acri v. State*, 242 Ariz. 235, 238, ¶ 5 (App. 2017). For motions to dismiss, this court considers only the pleadings and well-pleaded factual allegations, and it construes all reasonable inferences in plaintiff's favor. *See Cullen v. Auto-Owners Ins. Co.*, 218 Ariz. 417, 419, ¶ 7 (2008). This court need not accept "allegations consisting of conclusions of law, inferences or deductions that are not necessarily implied by well-pleaded facts, unreasonable inferences or unsupported conclusions from such facts, or legal conclusions alleged as facts." *Jeter v. Mayo Clinic Ariz.*, 211 Ariz. 386, 389, ¶ 4 (App. 2005). This court affirms the dismissal "if as a matter of law . . . plaintiffs would not be entitled to relief under any interpretation of the facts susceptible of proof." *Coleman v. City of Mesa*, 230 Ariz. 352, 356, ¶ 8 (2012) (citation omitted).

**¶8** Gann argues the State owed his son a duty to ban schools' use of 15-passenger vans based on (1) statutes, (2) the special relationship doctrine, and (3) the voluntary undertaking doctrine. To prevail on a negligence claim, a party must prove "(1) a duty requiring the defendant to conform to a certain standard of care; (2) a breach by the defendant of that standard; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual damages." *Bottomlee v. State*, 248 Ariz. 231, 234, ¶ 8 (App. 2020) (quoting *Gipson v. Kasey*, 214 Ariz. 141, 143, ¶ 9 (2007)). Gann also argues absolute immunity does not shield the State.

**¶9** Whether a duty exists is a threshold legal question this court reviews *de novo*. *Quiroz v. ALCOA Inc.*, 243 Ariz. 560, 564, ¶ 7 (2018). "A duty is an obligation, recognized by law, which requires the defendant to conform to a particular standard of conduct in order to protect others against unreasonable risks of harm." *Acri*, 242 Ariz. at 238, ¶ 7 (cleaned up). Duty relates to the existence of an obligation between parties, not the standard of care, which relates to whether a defendant breached an established duty. *See Alhambra Sch. Dist. v. Superior Court*, 165 Ariz. 38, 41 (1990). A duty can arise in various ways, including (1) common or statutory law, (2) special relationships between parties, and (3) a party's decision to engage in certain conduct. *Quiroz*, 243 Ariz. at 563, ¶ 2.

I.     **The Arizona Enabling Act, Arizona Constitution, and Arizona and Federal Statutes Do Not Impose a Tort Duty on the State to Ban Schools' Use of 15-Passenger Vans.**

¶10          Because the legislature, not the judiciary, has the power to declare public policy, the courts "exercise great restraint in declaring public policy" absent a statute. *Quiroz*, 243 Ariz. at 566, ¶ 19. To interpret statutes, this court first considers the statute's plain language. *Glazer v. State*, 244 Ariz. 612, 614, ¶ 9 (2018). Yet, this court does not read statutes in isolation. *Id.* at ¶ 10. Instead, this court reads them in context. *Id.*

¶11          A statute typically creates a tort duty only if designed "to protect [a] class of persons" against a "type of harm." *Sullivan v. Pulte Home Corp.*, 237 Ariz. 547, 550, ¶ 9 (App. 2015). The duty extends only to individuals within the class of persons injured from the statute's violation. *Id.* Gann argues the Enabling Act, Arizona Constitution, and state and federal statutes create a tort duty extending to his son. The State disagrees.

A.     **Enabling Act and Constitution**

¶12          Gann argues the State owes his son a nondelegable duty to supervise school transportation services based on Arizona's Enabling Act, Constitution, and laws. To support this argument, Gann begins with the Enabling Act, which says, "the schools, colleges, and universities provided for in this Act shall forever remain under the exclusive control of the said State." *See* Arizona-New Mexico Enabling Act, Act of June 20, 1910, Pub. L. No. 219, ch. 310, 36 Stat. 557, § 26. Gann then goes to article XX, section 7 of the Arizona Constitution, which says, "Provisions shall be made by law for the establishment and maintenance of a system of public schools . . . ." Next, Gann mentions article XI, section 2 of Arizona's Constitution, which adds, "The general conduct and supervision of the public school system shall be vested in a state board of education, a state superintendent of public instruction, county school superintendents, and such governing boards for the state institutions as may be provided by law."

¶13          In making his argument, Gann cites—and this court found—no case relying on any of those authorities for the proposition they imposed a relevant non-delegable tort duty on the State. Indeed, to the extent cases cited reference these provisions, they do so for wholly different reasons. *See, e.g.*, *In re Gen. Adjudication of All Rts. to Use Water in Gila River Sys. & Source*, 231 Ariz. 8 (2012) (interpreting the extent of federal control over land grants under the Enabling Act); *Green v. Garriott*, 221 Ariz. 404 (App. 2009) (holding corporate tax credit program did not remove State's "exclusive

control" of the public school system under the Enabling Act); *Roosevelt Elementary Sch. Dist. No. 66 v. Bishop*, 179 Ariz. 233 (1994) (interpreting the State's responsibility to fund public education under Arizona's Enabling Act and Constitution).

**¶14** Additionally, the plain language of Article XI, section 2 of Arizona's Constitution does not support Gann's argument. Article XI, section 2 vests the "general conduct and supervision of the public school system" in "a state board of education, a state superintendent of public instruction, county school superintendents, and such governing boards for the state institutions *as may be provided by law*." (Emphasis added.) Section 2's plain language limits any duties it creates to those the legislature provides in statute. *See Glazer*, 244 Ariz. at 614, ¶ 9 (interpreting statute's plain language). And the legislature has not created any statutory tort duty based on article XI, section 2. *See infra* ¶¶ 16–22.

**¶15** In summary, Gann has not shown that either the Enabling Act or Arizona's Constitution creates a duty the State owed to his son.

## B. Education Statutes

**¶16** Gann then argues subsection 15-921.A of the Arizona Revised Statutes establishes a tort duty because it says, "the Superintendent of Public Instruction shall supervise the provision of pupil transportation services." In isolation, the plain language appears to support Gann's argument. But in interpreting plain, unambiguous language, this court looks to its context. *Glazer*, 244 Ariz. at 614, ¶ 10. Context includes the language itself, the context surrounding the language, the statute as a whole, and *pari materia*. *Id.* Reading a statute *in pari materia* requires "looking to statutes which relate to the same person or thing and which have a purpose similar to that of the statute being construed." *Collins v. Stockwell*, 137 Ariz. 416, 419 (1983).

**¶17** Taken in context, subsection 15-921.A is a budgeting and finance statute. Section 15-921 resides in title 15, chapter 9 entitled "School District Budgeting and Financial Assistance." *See id.* The surrounding articles in chapter 9 cover only budgeting and finance issues:

| | |
|---|---|
| Article 1. | General Provisions for School District Budgets; |
| Article 1.1. | Career Ladder and Other Performance Incentives [relating to performance pay]; |
| Article 3. | School District *Revenue* Limitation for Maintenance and Operation; |
| Article 4. | Provisions for *Capital Outlay* and *Capital Levy*; |

Article 5.   State and Local *Assistance* to School Districts and Accommodation Schools [relating to financial equalization assistance];

Article 6.   County *Finance* Responsibilities for School Districts;

Article 7.   *Bond* issues and *Bonded Indebtedness*;

Article 8.   Student Accountability Information System [regarding transmitting "student level data and school finance data electronically"];

Article 9.   Federal *Monies* Received by the Department of Education; and

Article 10.  School District *Revenue Bonds*.

A.R.S. Title 15, Chapter 9 (emphasis added). Section 15-921's subsections emphasize that section's budgetary and financial purpose:

A. The superintendent of public instruction shall supervise the provision of pupil transportation services.

B. The superintendent of public instruction shall evaluate the transportation program and routes for the *purpose of* evaluating accurate *transportation support levels for the budget year*.

C. For each fiscal year the superintendent of public instruction shall, on or before May 15, inform each school district of the *daily route mileage* which shall be used in the *determination of* the school district's *transportation support level* for the budget year.

D. The superintendent of public instruction shall be responsible for *assembling the information provided by the school district and for determining the accuracy* of such information.

A.R.S. § 15-921 (emphasis added). Because subsection 15-921.A is a budgetary and financial provision, it creates no tort duty.

¶18       Other Arizona statutes further undercut Gann's plain language argument. The only article dedicated to safety in Title 15 does not reference transportation. *See* A.R.S. § 15-151 *et seq.* Sections 15-251 and -252 identify the Superintendent's duties, and do not include student transportation. Instead, § 15-342(12) gives each governing school board discretion to decide whether to "[p]rovide transportation or site transportation loading and unloading areas for any child or children if deemed for the best interest of the district, whether within or without the district, county or state." Though not controlling, the attorney general also

has opined § 15-342(12) means "school districts may, but are not required to, provide transportation for students to or from school." Op. Ariz. Att'y Gen. I02-010, 7. Under these statutes, school districts—not the State—decide whether to provide transportation to students.

**¶19** In short, Arizona's education statutes impose no duty on the State to prohibit schools from using 15-passenger vans. *See supra* ¶ 11.

### C. Transportation Statutes

**¶20** Gann also argues Arizona's transportation statutes contained in A.R.S. Title 28 impose a relevant duty on the State. Gann first argues the State had a duty because statutes charged the Department of Public Safety (DPS) with adopting rules for school bus safety and those rules must meet relevant federal standards. *See* A.R.S. §§ 28-900.A, .C. Gann also argues the duty arises because DPS must inspect school buses (A.R.S. §§ 28-984.A, .B, and .D) and establish rules regarding school bus driver licensing (A.R.S. § 28-3228.A).

**¶21** Gann, however, does not articulate how those transportation statutes create a relevant tort duty. Gann simply moves from reciting those statutes to saying DPS did not "fulfill those duties," and "[a]s a result, an incompetent, uncertified driver's conduct led to the rollover of the dangerous and unsuitable 15-passenger van involved in the collision." In the absence of any authority or analysis to show the statutes created a tort duty, this court finds none. *See supra* ¶ 11.

**¶22** Gann also argues the State must ban schools' use of 15-passenger vans because several sources indicate those vehicles have increased risks for rolling over. But this argument relates to the *standard* a recognized duty imposes, not whether the claimed duty exists. Absent a duty, the standard is irrelevant. *See Quiroz*, 43 Ariz. at 564, ¶ 7.

### D. Federal Law

**¶23** Gann argues the Federal Motor Vehicle Safety Act also imposes a non-delegable duty on the State to ban schools' use of 15-passenger vans. Gann cites two federal statutes regulating vehicles, but they do not compel states to prohibit the use of 15-passenger vans to transport students. *See* 49 U.S.C. § 30112(a) (applies only to purchasing or leasing "new 15-passenger van[s]" but not their use); 49 C.F.R. § 571.222 (regulates school bus "occupant protection requirements" but not the scope of their use). Once again, Gann cites—and this court found—no case or other authority concluding those sections ban the use of 15-passenger vans.

II.     **No Special Relationship Exists to Impose a Duty on the State to Ban Schools' Use of 15-Passenger Vans.**

¶24     Next, Gann argues the special relationship between "an educational institution and the student receiving the education" creates an "affirmative duty" upon the State to protect students. Arizona courts have analyzed special relationship theory regarding students only in the context of school districts and schools. *See, e.g.*, *Dinsmoor v. City of Phoenix*, 251 Ariz. 370 (2021) (school district owed no duty to protect student from boyfriend off school grounds); *Hale v. Window Rock Unified Sch. Dist.*, 252 Ariz. 420 (App. 2021) (school district owed duty to protect student from assault on school campus); *Monroe v. Basis Sch., Inc.*, 234 Ariz. 155 (App. 2014) (school owed no duty to protect student during travel to and from school). The State's duty was not an issue in those cases. Indeed, this court found no case in which the State was liable to a student on a special relationship theory. In short, Gann argues for an unprecedented expansion of the special relationship theory. This court will not extend it under the facts here.

III.    **The State Owes No Duty Under the Voluntary Undertaking Doctrine.**

¶25     Lastly, Gann argues the State is liable under the voluntary undertaking doctrine. "[A] duty based on a negligent undertaking exists when a person, who otherwise owed no duty to plaintiff, voluntarily agrees to provide services for another person; under such circumstances, the person assumes a duty to exercise reasonable care in providing those services." *Quiroz*, 243 Ariz. at 574, ¶ 66. Gann argues the State, through the Department of Education, undertook "the task of supervising 'pupil transportation services'" under § 15-921.A.

¶26     But the State's § 15-921 supervisory role relates to budgetary and financial decisions, not safety decisions. *See supra* ¶¶ 14–17. And the two cases on which Gann relies again involved school and district—not State—liability to students. *See Tollenaar v. Chino Valley Sch. Dist.*, 190 Ariz. 179 (App. 1997) (holding district not liable on voluntary undertaking doctrine); *Alhambra Sch. Dist.*, 165 Ariz. 38 (1990) (holding district owed duty to crosswalk users based on statutory directives and a special relationship, not the voluntary undertaking doctrine). This court found no analogous case involving State liability. This court will not extend tort liability to the State in the absence of a supporting legal basis.

¶27     This court need not address the State's absolute immunity defense because the State owed no duty obligating it to any specific action.

**CONCLUSION**

¶28      Because Gann failed to show any basis for the State's alleged duty to Gann's son, the superior court correctly dismissed Gann's complaint against the State. We affirm.

